## SUPREME COURT.

### ELIZABETH LANGDON agt. LANDON C. GRAY and ELIZABETH B. PHELPS.

*Mortgage — Bonus paid for extension of payment — Usury.*

Where G., on the application of L., agreed to advance moneys, and take an assignment of two valid mortgages made by L., and which mortgages were due and held by one T., the agreement being that L. should extend the payment of both mortgages, and should advance the further sum of $3,000, to be secured by a mortgage to be made by L., and that L. should pay to G. a bonus of ten per cent upon the moneys advanced for the accommodation and for the forbearance; the $3,000 mortgage being made, in part, to raise the funds with which the ten per cent bonus was to be paid, and which was actually paid thereout:

*Held*, that the two mortgages first above mentioned, of which an assignment was taken by G., the full amount of principal and interest thereon being paid to T., the holder, were valid securities in the hands of G.

Also, that the $3,000 mortgage made to cover the ten per cent bonus was usurious and wholly void.

And where, after the expiration of the year above named, a further bonus of ten per cent was exacted by G. and paid by L. for a further extension of a year, *held*, that the sum paid by way of bonus should be credited on the two mortgages first above mentioned.

Where a chattel mortgage was made to secure, in part, a valid debt, and in part the payment of a note given upon an usurious agreement, *held*, that the chattel mortgage could only be enforced to the extent of the valid debt, and as to the residue it was void.

IN May, 1873, the plaintiff was the owner of premises 279 Fourth avenue, New York city; the holder of the second mortgage thereon had procured a judgment of foreclosure for upwards of $6,000, and he also held a third mortgage for $1,450. The plaintiff applied to John A. Kamping, a broker, for moneys to pay said mortgages; the broker pro-

cured the money on condition that plaintiff would pay a bonus of ten per cent. Plaintiff requiring more money, the broker procured the further sum of $3,000, on the same terms. The actual amount thus agreed to be loaned was $11,432.30, and the defendant Landon C. Gray, was the party ostensibly loaning the money, though the negotiations were conducted through W. Farley Gray the agent and attorney in fact of L. C. Gray, the son of W. Farley Gray.

When the transaction was closed, at the office of Mr. James Thomson (the holder of the judgment and mortgage of $1,450), the defendant Gray took an assignment of the decree of foreclosure and the $1,450 mortgage, the amount then due Mr. Thomson being $8,432.30; and plaintiff gave the defendant Gray a mortgage for $3,000, covering the premises 279 Fourth avenue and 281 Fourth avenue, payable in one year; and the defendant Gray, by his agent and attorney, stipulated in writing to extend the time of payment of the decree and the mortgage for $1,450 mortgage for one year.

The defendant Gray gave his check for $7,189 (which was not produced), and W. Farley Gray testified on the trial that he handed the plaintiff $3,000 in cash. The plaintiff testified that she only received $1,756.77, out of which she paid Kamping $114.32 commissions, and produced a statement in the handwriting of Kamping, who was present to corroborate her evidence. Mr. Thomson testified that he received the full amount due him, $8,432.30, but did not remember who gave him the difference between the check for $7,189 and the amount due him. He also testified that no one ever applied to him for the sale of his securities, but that plaintiff informed him she had raised the money to pay him.

It thus appeared that, on the day of the closing of the transaction, $10,189.07, and no more, was paid by the defendant Gray for the loan of $11,432.30 thus negotiated, leaving $1,243.23 for bonus. The $100 over and above the ten per cent was claimed to be retained by W. Farley Gray for " extra· services." It was claimed by the defendant Gray

Langdon agt. Gray.

that the mortgages held by Mr. Thomson were purchased at a discount of ten per cent, and the balance of the $1,243.23, to wit, $400, was for the services of W. Farley Gray in examining the title. The broker, Kamping, swore that the word "loan" was never mentioned by him or the plaintiff in the negotiation, and that the idea of a "loan" was never in his mind. He was confronted on the stand by his receipt, all in his own handwriting, for $114.32, "in full for commissions on *procuring loan* of $11,432.30."

At the end of the year the plaintiff was required to pay, and did pay, a further ten per cent bonus on the loan of the $11,432.30.

At the end of the second year, being unable to pay a third bonus, and under threats of foreclosure, she executed a chattel mortgage for $2,861 upon her furniture, to the defendant Gray, to secure certain advances, and a part of the bonus for the extension, and was also required to assign the rents of the premises to W. Farley Gray, then leased for $6,500 per annum; out of which rents the taxes and interest were to be paid, and out of which she was to receive fifty dollars per month for her support — which latter amount she never did receive. In November, 1876, and in violation of the agreement to extend the loan, the premises were advertised for sale, under the decree assigned to the defendant Gray — at which point this action was brought and an injunction obtained.

In his answer, the defendant Gray claimed that he had no interest in the securities, having assigned them before this action to the defendant Phelps, who resided on the premises; whereupon, Mrs. Phelps was made a party.

Further facts appear in the opinion of the court.

*Charles W. Dayton* and *Albert Cardozo*, for plaintiff.

*Home & Sanders*, for defendant Gray.

*Shearman & Sterling*, for defendant Phelps.

VAN VORST, J. — The plaintiff was pressed by her creditor for the payment of two mortgages upon her property, upon one of which a judgment of foreclosure and sale had been obtained ; the other was due. In her straits, she applied to the defendant Landon C. Gray, through one Kamping, a broker, for aid.

As far as the two mortgages are concerned, the facts justify the conclusion that the understanding of the parties was, that the defendant Landon C. Gray should provide the funds and take an assignment thereof, with the judgment of foreclosure, and give forbearance to the plaintiff for one year.

It was also understood that the defendant should loan the plaintiff the sum of $3,000, in addition, for which he was to receive a mortgage upon the plaintiff's premises. It was agreed that the defendant should receive a bonus of ten per cent for his aid and forbearance.

The defendant Landon C. Gray claims, however, that the ten per cent was to be computed upon the two mortgages only. The evidence justifies the conclusion that it was the understanding of the parties that the bonus was to be paid out of the $3,000 agreed to be loaned.

The two mortgages and the judgment of foreclosure were held and owned by James Thomson, upon which there was due and owing, when the transaction was closed, the sum of $8,432.30. The parties met at Thomson's office to pay the money due him, and receive assignments of the mortgages and judgment. The defendant's agent, who had represented him in the previous negotiations with the plaintiff and the broker, brought to Mr. Thomson's office a certified check for $7,189.07, and $3,000 in currency.

The check he delivered to Mr. Thomson, and the $3,000 in currency he claims to have delivered to the plaintiff, and in this he is substantially corroborated by the broker, Kamping. The plaintiff, on the other hand, testifies that she received only the sum of $1,756.75 in money. The fact is, that Thomson received the balance of his claim, over and

Langdon agt. Gray.

above the check, from either the plaintiff or the agent of the defendant. As far as the result is concerned, I do not think it makes any difference which of the parties paid it. It was paid from the $3,000 ostensibly loaned to plaintiff. Upon the receipt of the whole sum due him, Thomson delivered to the agent of the defendant assignments of the two mortgages and the decree of foreclosure, and the agent received from the plaintiff a mortgage for $3,000.

The securities which the defendant Landon C. Gray, through his agent, received, amounted to $11,432.30, yet he paid and advanced only $10,189.25. The difference between these two sums, $1,243.25, and which was not paid by the defendant, was designed to cover the bonus agreed to be paid the defendant for his accommodation, and was retained for that purpose, and for professional services rendered by the defendant's agent, who is an attorney and counselor at law.

If the bonus was computed only on the amount of the Thomson mortgages, as is claimed by the defendant's agent, there was an excess of $400 which is claimed by him for such services.

I find nothing in the case which justifies the conclusion that it was understood and agreed that the defendant's agent and attorney should receive compensation to that amount for any services he might render in the matter. On the other hand, if the ten per cent was computed on the whole amount of $11,432.30, there would still be an excess of $100 to cover such services, and Kamping, the broker, says such sum was retained or received by the defendant's agent for extra services in the matter.

Taking the defendant at his word, that he was to purchase the mortgages from Thomson and hold them for one year, and as Thomson was to make, and did make, no deduction from the amount due him, it can, as already observed, make no real difference whether he or the plaintiff paid to Thomson the amount of $1,243.25, over and above the check for $7,189.07, out of the $3,000. The defendant received assign-

ments of the mortgages for the full amount which was actually paid.

In this view, the plaintiff did not receive, nor was it the understanding of the parties that she should receive to her own use the $3,000, the payment of which was secured by her mortgage. The payment thereout of the sum of $1,243.25 was a method resorted to by the parties of securing to the defendants an illegal bonus or premium on the loan, and forbearance of money over and above the interest allowed by law.

That such bonus should be paid was a part and parcel of the negotiation which resulted in the assignment of the two mortgages, and the making of the additional one for $3,000.

The vice of usury enters into the $3,000 mortgage made to raise the amount to satisfy this illegal claim. The moneys ostensibly secured thereby being, with the understanding of all concerned, used for such unlawful purpose.

I do not think that this attempt to evade the statute against usury affects the two mortgages assigned; they were valid instruments, and were, in fact, purchased by the defendant. He did, in effect, pay the whole amount claimed by Thomson. Without payment in full, he could not, as he well knew, secure the assignments; and the result is, that the $3,000 mortgage covers the excess paid on the purchase over and above the certified check, and this includes the illegal bonus exacted on the transaction. In this view, the $3,000 mortgage is illegal and void.

In addition to this, at the expiration of the year from the making of the assignments, the plaintiff not being prepared to pay, a new bonus of $1,100 was demanded from her, and paid partly in cash, and the residue by her note to the defendant's order.

The case of *The Real Estate Trust Company* agt. *Keech* (7 *Hun*, 253), while it holds that the payment of a bonus, in addition to lawful interest on the extension of a valid debt, does not invalidate the debt, yet decides that the amount paid

in excess of legal interest should be applied as a payment on the mortgage.

Whatever amount has been paid by the plaintiff as a condition of subsequent extension, over and above lawful interest, should be applied upon the two mortgages, and they should be reduced *pro tanto*.

The chattel mortgage referred to in the pleadings and in the evidence, while it was in part given to secure a valid debt, also includes the amount of a note for $500, given as a condition for the extension of previous advances. To this extent it is invalid.

The action of W. Farley Gray in the matter of the extension, and the bonus exacted, must be regarded as the action of the defendant Landon C. Gray, whom he, in truth, represented, and for whom he acted in all the negotiations.

Judgment must be given in pursuance of the above directions, and findings made accordingly. Under the pleadings and proofs, I do not think a tender of the valid claims covered by the chattel mortgage was necessary as a condition to maintaining this action.