## J. K. RATHBONE V. GASTON BOYD.

1. REDELIVERY BOND; *Surety; No Estoppel.* Where the surety of a defendant executes an undertaking to the plaintiff, under § 182 of the code, conditioned that the defendant will deliver the property replevied to the plaintiff, if such delivery be adjudged, and pay all costs and damages that may be awarded against the defendant, and thereon the property is returned to the defendant, such surety is not estopped from claiming an interest in the property by virtue of a chattel mortgage executed to him by the defendant.

2. CHATTEL MORTGAGE—*Partly Valid, Partly Void.* Where a chattel mortgage is made to secure, in part, a valid debt, and in part, money advanced upon an illegal contract, the chattel mortgage may be enforced to the extent of the valid debt, although void as to the residue.

3. ADVERSE POSSESSION; *Replevin, not Maintained; Chattel Mortgage.* Where R. made an entry of public land, on October 9, 1878, under the timber-culture laws of the United States, and one S., being a qualified preëmptor, in good faith, on December 26, 1878, filed a declaratory statement of his intention to purchase the same land under the preëmption laws, alleging settlement October 1, 1878, and paid the officials of the local land office their fees therefor and obtained from the register of the office a certificate of his entry, and was continuously in the actual possession of the land, from his settlement thereon in 1878, to July 14, 1881, contesting with the plaintiff the title to the land, and continuously endeavoring to perfect his title, *held*, that the possession of S. is adverse, although his entry is finally cánceled, and R. obtains the land. *Held further*, That R. cannot maintain a replevin action for the wheat sown and harvested on the land by S. while in such possession thereof; and also *held*, that S. had the right to mortgage the wheat sown and harvested by him on the land while in the actual possession thereof.

*Error from Marion District Court.*

AT the May Term, 1882, of the district court, defendant *Boyd* recovered a judgment against plaintiff *Rahtbone*, who brings it here for review. The opinion states the nature of the action, and the facts.

*Doster & Bogle*, for plaintiff in error.

*Greene & Shaver*, for defendant in error.

The opinion of the court was delivered by

HORTON, C. J.: This was an action originally brought by the plaintiff, J. K. Rathbone, against one Eli W. Shrock, to recover possession of certain wheat valued at $400, grown upon a quarter-section of land in Marion county. At the time the action was commenced, Shrock had harvested the wheat. After the order for the delivery of the property to the plaintiff was issued under which the sheriff took possession of the wheat, Shrock executed a redelivery bond, with Gaston Boyd as surety thereon. On August 24, 1881, Shrock and his wife relinquished possession of the land upon which the wheat was grown, and all claim to the wheat, in consideration of the plaintiff's promise to pay them $100. On November 1, 1881, the defendant Boyd filed his motion asking that he be made a party defendant and be permitted to defend. In his motion, he alleged, among other matters, that he held a chattel mortgage upon the wheat in controversy, executed by Shrock; that he had signed Shrock's redelivery bond; that Shrock was insolvent, and had colluded with Rathbone to allow judgment to be entered against him, and have the judgment enforced by action on the redelivery bond. The motion of Boyd was sustained, and it was agreed by the plaintiff and Boyd that the allegations in and exhibits to the motion should be treated as the latter's answer.

Upon the trial it appeared that, in 1875, one Ainsworth made a timber-culture entry of the real estate upon which the wheat was grown, and in March, 1878, relinquished his claim to the land and the improvements thereon in favor of the plaintiff, who paid him therefor $1,000; that the improvements consisted of some fifty acres of broken ground and about twenty acres planted in trees; that the order of the land department canceling Ainsworth's entry, under his relinquishment, was received at the local land office October 1st, 1878, and on October 9th, of the same year, the plaintiff made an entry of the land under the timber-culture laws; that on December 26th, 1878, the said Eli W. Shrock filed

a declaratory statement of his intention to purchase the land under the preëmption laws, and alleged a settlement upon the land on October 1st, 1878; that a contest was inaugurated between the plaintiff and Shrock over their respective claims to the land; that on December 18th, 1879, the commissioner of the general land office decided in favor of the plaintiff and ordered the cancellation of Shrock's preëmption filing, and held the plaintiff's entry valid; that on May 15th, 1880, the secretary of the interior, upon an appeal prosecuted by Shrock, affirmed the decision of the commissioner; that thereafter Shrock made and argued before the secretary a motion for a reconsideration of this decision; that on September 24th, 1880, the secretary overruled the motion; that thereafter Shrock again appealed to the secretary for a reconsideration of the case, and on July 14th, 1881, the case was finally decided against him; that in the season of 1880 Shrock sowed winter wheat on the premises; that on September 16th, 1880, he executed his note to Boyd for the sum of $225, and to secure the same also executed a chattel mortgage on the growing wheat, which mortgage was duly filed; that after the wheat was harvested and sacked Boyd took possession of it under his mortgage; that on August 1st, 1881, the plaintiff brought an action of forcible entry and detainer against Shrock before a justice of the peace, to oust him from the disputed land; that on the 15th of that month judgment was rendered in the plaintiff's favor and no appeal taken; that from the time of Shrock's settlement, in 1878, he had been continuously in possession of the land. The jury found a verdict for the defendant, and the plaintiff brings the case here.

It is contended, as the defendant Boyd signed the redelivery bond with Shrock, that he is estopped from claiming the possession of the property replevied, or any interest therein. If this proposition be true, it must be said that the court erred in allowing him to defend. The cases of *Sponenbarger v. Lemert*, 23 Kas. 55; *Haxtun v. Sizer*, 23 id. 310; *Wolf v. Hahn*, 28 id. 588, are cited as decisive.

These decisions are not applicable. In *Sponenbarger v. Lemert*, supra, the execution was levied on certain personal property, as the property of the judgment debtor; the bond therein provided that the property should be delivered at a time and place appointed for the sale thereof.

In *Haxtun v. Sizer*, supra, the bond was executed in an attachment proceeding, under the provisions of § 199 of the code. *Wolf v. Hahn*, supra, was also an attachment case.

These decisions rest upon the principle that "parties cannot be allowed to gain advantages [possession of the property levied on] by making admissions and then deny the truth of such admissions, to the injury of others who relied upon their truth, and who had a right to rely thereon. When a redelivery bond is given to retain the possession of property seized upon execution or attachment, the constable and creditor have the right to believe, as against the parties giving it, that the property belongs to the debtor." (*Sponenbarger v. Lemert*, supra; *Haxtun v. Sizer*, supra.)

The bond or undertaking executed by the defendant is of a very different character. The gist of the action brought by the plaintiff was the wrongful detention of the property on the part of Shrock. The condition of the bond or undertaking executed, was that the defendant would deliver the property to the plaintiff, if such delivery was adjudged, and pay the costs and damages that might be awarded against him in the action. To succeed, the plaintiff had to establish that he owned the property; that he was entitled to the immediate possession of the same, and that the property was wrongfully detained by the defendant. In his defense, Shrock could have shown that the plaintiff was not the owner of the property, nor entitled to the possession thereof; and this he could have done by showing that Boyd, or some other person, was the owner of the whole of the property, or had a special ownership or interest in the property. (*Wilson v. Fuller*, 9 Kas. 190; *Town of Leroy v. McConnell*, 8 id. 273.) Therefore the bond or undertaking executed by Shrock and Boyd did not necessarily admit that Shrock was the owner

of the property; did not change the issues to be tried in the replevin action; did not deprive the plaintiff of any of his rights; nor influence him to act in a manner different from the way he would have acted in the action if the bond or undertaking had not been given. For these and other reasons, the defendant Boyd was not estopped from alleging his interest in the property under his chattel mortgage; and the court did not err in allowing him to defend that interest.

The language in the charge of the court is subject to some of the criticisms of counsel; and yet we perceive no material error in refusing the instruction prayed for by the plaintiff, or in the direction given. The important questions in the case are, whether the mortgage given to Boyd by Shrock was valid to secure any indebtedness; and further, whether Shrock, at the date of the execution of the mortgage, had such an interest in the growing wheat that he could transfer it, or execute a chattel mortgage thereon. One hundred and fifty dollars of the debt attempted to be secured by the mortgage was advanced by Boyd to Shrock to carry on the land contest with plaintiff, under the agreement that, in the event of Shrock's success in the contest, he would convey a part of the land to Boyd, when final proof was made.

Conceding, for the purposes of this case, that the chattel mortgage, to the extent of the $150, is invalid, because of the illegality of such consideration, yet, as the illegal consideration of indebtedness can be separated from the legal items, the mortgage must be regarded good as far as it secures a legal claim or debt. This is not like the case of a mortgage participated in by both parties to defraud the creditors. (Jones on Chattel Mortgages, 350, 351; *Langdon v. Gray*, 52 How. Pr. 387; *Weeden v. Hawes*, 10 Conn. 50.)

The court charged the jury substantially, that—

"If they found from the evidence that Shrock went upon the land upon which the wheat in question was grown, and subject to preëmption, with the intention of preëmpting it and perfecting his title thereto, and such land was subject to such entry; and while thereon and actually occupying the land, en-

deavoring to perfect his title, he sowed, raised and harvested the wheat in question, he was the owner thereof, and the plaintiff was not entitled to the wheat, although he finally defeated Shrock in acquiring the title to the land, and procured the title himself; and if the wheat was grown on the land so held by Shrock, he had the right to mortgage it."

It appears from the uncontradicted evidence that Shrock was qualified to preëmpt land under the laws of the United States; that on December 26, 1878, he filed a declaratory statement of his intention to purchase the land under the preëmption laws; that he paid the officials of the local land office at Wichita their fees therefor, and obtained from the register at said office a certificate of his entry, and was continuously in the actual possession of the land from his settlement thereon in 1878, contesting with the plaintiff the title thereto, and continuously endeavoring to obtain and perfect his title.

Now, although it was finally decided that the land was not subject to preëmption by Shrock, and that the plaintiff was not entitled thereto, yet Shrock must be deemed to have held the land adversely to the plaintiff. So much of the instruction as refers to the land being subject to entry or preëmption ought to have been omitted, or at least qualified. But if the entry was made by Shrock in good faith, and the certificate of entry obtained in good faith, upon the payment of the fees to the officers of the government having the right to accept the fees and issue the certificate of entry, the possession of the land thereunder was adverse. (*Caldwell v. Custard,* 7 Kas. 303; *Alderman v. Boeken,* 25 id. 658; *Rld. Co. v. Clark,* 68 Mo. 371; *Hughes v. Israel,* 73 id. 538; *Page v. Hobbs,* 27 Cal. 483; *Page v. Fowler,* 28 id. 605; *Page v. Fowler,* 37 id. 100; *Page v. Fowler,* 39 id. 412.)

The counsel suggest that, even if Shrock had at one time adverse possession, as the commissioner of the general land office, on December 18th, 1879, ordered the cancellation of his preëmption filing; and as the secretary of the interior, on May 18th, 1880, affirmed the decision of the commis-

sioner, Shrock was not at any time entitled to the ownership of the wheat sown in the season of 1880. This position is partially answered by the same counsel in their reply brief, wherein they assert "that the land contest was not ended at the time of the execution of the chattel mortgage, on September 16th, 1880, and although on September 24th, 1880, the contest between Shrock and the plaintiff was decided by the secretary of the interior, thereafter Shrock continued the contest and the final decision was not rendered until July 14th, 1881." But aside from this, however, under the circumstances of this case, Shrock was the owner of the crops grown and actually harvested by him, subject, of course, to any lien that he had given thereon. At common law, a person who had been ousted from land might, after recovery and reëntry, maintain his action of trespass for the mense profits and for waste; for the reason that after the reëntry, the law supposed he had always been seized, and the acts of the defendant were held to be a continuous trespass upon the rightful possession of the actual owner. In this case, the plaintiff did not obtain an order for the restitution of the premises until August 15th, 1881, and Shrock did not actually relinquish possession until August 24th, 1881. Therefore the crops grown and actually harvested by Shrock, while in possession of the land, are to be regarded as his own; and while the plaintiff might have recovered for the use and occupation of the premises, he could not maintain an action of replevin for the crops so grown and actually harvested by Shrock. (*Page v. Fowler*, supra; *Stockwell v. Phelps*, 34 N. Y. 363.) As the mortgage to Boyd was executed by Shrock while in the possession of the premises, the mortgage secured a lien on the wheat to Boyd for the valid indebtedness due him.

We are referred to *Freeman v. McLennan*, 26 Kas. 151, as favorable to the plaintiff. Such is not the case. That decision in no way conflicts with *Caldwell v. Custard*, supra, and was not intended to overrule or qualify it. Smith, from whom McLennan purchased, did not claim any ownership in the premises, and under the evidence, had no lease, color of

title or adverse possession.   He was merely a trespasser, who temporarily entered upon the land, in the absence of the owner, and planted some millet, without the authority or consent of the owner of the premises.

The judgment of the district court will be affirmed.

All the Justices concurring.