CADWALLADER WALLACE, PLAINTIFF IN ERROR V. JOSIAH
C. PARKER, DEFENDANT IN ERROR.

*Jurisdiction.* This court has jurisdiction in an appeal from. he supreme court of
the state of Ohio, in a case where was drawn in question at the trial the con-
struction of the act by which Virginia ceded the territory she claimed north-
west of the river Ohio to the United States, and of the resolution of congress
accepting the deed of cession, and the acts of congress prolonging the time
for completing titles to lands within the Virginia military reservation; the deci-
sion of the supreme court of Ohio, having been against the title set up under
the acts of congress.

Construction of the acts of congress relative to the Virginia reservation of mili-
tary lands in Ohio.

ERROR to the supreme court of the state of Ohio.

Josiah C. Parker, the defendant in error, filed a bill in the
court of common pleas of Brown county, in the state of Ohio,
praying for an injunction; and that Cadwallader Wallace, the
defendant in error, should be compelled to release his legal
title to one thousand acres of land in the Virginia military dis-
trict in the state of Ohio, which Josiah Parker, the grand
father of the complainant, had entered, on or about the 12th of
of January 1788, on part of a Virginia military warrant,
No. 1920; under which entry a survey was made, but which
survey, by the omission of the surveyor, was not returned
to the proper officer for record. The bill stated that the de-
fendant, Cadwallader Wallace, had caused part of the tract to
be located, and had obtained a grant for the same; and upon
the said grant had prosecuted a writ of ejectment against per-
sons in possession of the land under the complainant.

The defendant held under a patent, dated April 13, 1824,
issued to him in consideration of military services performed
by Thomas Parremore to the United States, a captain, for the
war, in the Virginia line on continental establishment, and in
pursuance of an act of the congress of the United States of the
10th day of August 1790, entitled "an act to enable the officers
and soldiers of the Virginia line on continental establishment to
obtain titles to certain lands lying northwest of the river Ohio,
between the Little Miami and Sciota." The survey on which

the patent was founded, was dated the 17th day of December 1823. In an answer afterwards filed to an amended bill, he says that the complainant has no equitable claim to the land, because the entry made by him is based upon a resolution warrant, which is not protected by the act of congress, and cannot therefore be a foundation on which to base a valid entry.

The pleadings also exhibit other questions as to the nature and validity of the surveys of the land. As no decision of the court was given upon any of the questions presented by those parts of the proceedings, they are omitted.

The petition of Josiah Parker, the grandfather and devisor of the complainant, in 1783, to the legislature of Virginia for an allowance of land, and the proceedings thereon, were as follows:

To the Honourable, the General Assembly:

The request of Josiah Parker humbly representeth, that he was, in October 1775, appointed by the assembly major of the fifth regiment on continental establishment; that he was, in August 1776, promoted to the rank of lieutenant-colonel, and the April following had the honour of receiving a full colonel's commission in the same regiment, which he retained until August 1778, when he resigned it to general Washington, on the banks of the North river, after the arrival of Compte D'Estaing and the French alliance. That previous to all this, he raised the first company of minutemen on the south side of James river, and was on actual duty at the Great Bridge with his company until his promotion in the continental line. That since his resignation, he has, on every invasion, been employed against the enemy, and with active and disagreeable commands, with the rank still of colonel in the militia, which he satisfied himself with, though inferior to the rank he held in the army, as he felt the satisfaction of serving his country; and during all this his services in the militia, he never received a shilling of money of any sort from this state or the continent; notwithstanding, by the act of assembly allowing a bounty of lands to the officers and soldiers, he is precluded from any share, because he did not serve three years in a continued line; that, nevertheless, he is emboldened to request the assembly will allow him *a colonel's allowance of lands,* because they have resolved that generals Stephens and Lawson should receive

theirs; and although each of these are general officers of the militia, yet they were only colonels at the same time with your petitioner, who remained longer in the continental army than either of them.

In the House of Delegates, Tuesday, the 18th of November 1783:

Mr Mann Page reported from the committee of propositions and grievances, that the committee had, according to order, had under their consideration the petition of Josiah Parker, to them referred, and had agreed upon a report, and come to a resolution thereupon, which he read in his place, and afterwards delivered in at the clerk's table, where the same was again twice read and agreed to by the house, as followeth: It appears to your committee, that in October 1775, the said Josiah Parker was appointed a major of the fifth regiment on continental establishment, in which rank he acted until August 1776, when he was appointed lieutenant-colonel; and in April 1777, he received a full colonel's commission in the same regiment, and acted in that rank until August 1778, when he resigned. It also appears to your committee, that since that resignation of the said Josiah Parker, he hath, upon every invasion of this state by the enemy, been upon duty with the militia, in the rank of colonel, with the command of the whole militia on the south side of James river after the invasion by General Philips, until the arrival of the Count de Grasse. Resolved, that the petition of the said Josiah Parker, praying that he may be allowed the bounty in lands by law given to a colonel in the continental line, is reasonable.

Land Office, Military Warrant, No. 1920:

To the principal surveyor of the lands set apart for the officers and soldiers of the commonwealth of Virginia. This shall be your warrant to survey and lay off, in one or more surveys, for colonel Josiah Parker, his heirs or assigns, the quantity of six thousand six hundred sixty-six and two-thirds acres of land, due unto the said Josiah Parker, in consideration of his services for three years as a colonel in the Virginia continental line, agreeable to a certificate from the governor and council, received into the land office.

Given under my hand and seal of the said office, this 21st day of Nov. in the year 1783. JOHN HARVIE, R. L. Office.

[Wallace v. Parker.]

The complainant also exhibited in evidence a patent for five hundred and ten acres, issued to him by the United States, as the devisee of Josiah Parker; which patent, bearing date the 1st of February 1827, recited, that in consideration of military services performed by Josiah Parker, for three years a colonel to the United States in the Virginia line on continental establishment, and in pursuance of an act of congress of the United States, passed on the 10th day of August in the year 1790, entitled "an act to enable the officers and soldiers of the Virginia line on continental establishment to obtain titles to certain lands lying northwest of the river Ohio, between the Little Miami and Sciota," and other acts of the said congress, amendatory to the said act, there is granted by the United States unto Josiah C. Parker, devisee of the said Josiah Parker, a certain tract of land, containing five hundred and ten acres, situate between the Little Miami and Sciota rivers, northwest of the river Ohio, on the waters of Red Oak and Eagle creeks, branches to the Ohio, being part of a military warrant No. 1920.

The court of common pleas of Brown county, on the 26th of September 1826, ordered and decreed that the complainant's injunction for the land aforesaid, and the costs of the suit at law, be rendered perpetual; and that said defendant do, by deed duly executed, within thirty days, release to the complainant the land herein before described by metes and bounds; and, in case of failure of said defendant to execute such release, that then and in that event this decree shall operate as such release; and it is further ordered and decreed by the court, that the defendant pay the complainant his costs by him about his suit in this behalf expended, also his costs about his defence in the action at law expended, within thirty days; and, in case of failure, that said complainant have execution for said costs, and the parties are hence dismissed. And thereupon the defendant, by his counsel, gave notice that he would appeal from the decree aforesaid to the supreme court.

The supreme court of Ohio, at November term 1828, affirmed the decree of the court of common pleas; and the defendant prosecuted a writ of error to this court.

The case was argued by Mr Creighton, for the plaintiff in error; and by Mr Corwin, for the defendant.

For the plaintiff it was argued that this case was within the cognizance of the court under the provisions of the twenty-fifth section of the judiciary act of 1789. 7 Wheat. 1. The warrant issued to Josiah Parker by mistake, and this is a matter to be inquired into by the court. It is shown by the record that both parties claim under the various acts of congress, relative to the grants of lands to officers and soldiers of the Virginia line. The right of the defendant in the state court of Ohio, under that law, has been denied. Thus the construction of the act of congress is involved in the case, and the court have full jurisdiction over it. By the facts disclosed in the pleadings and in the exhibits, it is most apparent that the supreme court of Ohio, in deciding the case, were bound to review the statutes of the United States in reference to the subject, and to give a construction to them. The plaintiff in error contends that the court gave an erroneous construction to the act. Cited Hickie v. Starke, 1 Peters, 98; Harris v. Denny, 3 Peters, 292; Fisher v. Cockrel, 5 Peters, 248.

As the warrant to Josiah Parker emanated from the state of Virginia, and was issued by an officer of the state, and the United States have assumed the execution of the laws of Virginia under which the same was granted, the courts of Ohio must have had those laws before them and must have construed them.

The law of the United States, of August 10, 1790, gives land on the Sciota river to satisfy those who are entitled to land by the law of Virginia, under military warrants. The plaintiff in error contends that the grant to the devisor of the defendant in error was not authorized by the Virginia law. Swann's Laws of Ohio, 70, 127.

It is denied that the title of the defendant in error is protected under the act of congress. In September 1783, congress passed the act proposing the cession of the lands north and west of the Ohio river to the United States; and in October 1783, the legislature of Virginia acceded to the terms offered by that act.

In May 1779, the state of Virginia passed the first law relative to the grants of lands for military services. No quantity was designated by that act. In October 1779, a law was passed regulating the quantity each officer should have. Swann's

[Wallace v. Parker.]

Laws, 11. These were the only laws on the subject in force at the time of the cession; and under these laws no one was entitled to a warrant who had not served on the continental establishment three years, or until the end of the war; or who was the legal representative of one who was killed in battle or had died in the service.

Under the act of congress of 1800, state line officers were not entitled to land. And that act expired in three years. If the defendant could avail himself of the provisions of that act, he was bound to show a compliance with its provisions within the three years. The act of 1807 provides for another class of officers.

After the cession made by Virginia to the United States, she might provide as she thought proper for her meritorious officers; but that provision could not be made out of the land ceded, unless the officer had served three years. And the issuing of a patent under the act of 1807 is prohibited under the act of 1807, unless the person applying for it was entitled to a warrant under the laws of Virginia prior to the cession. The warrant to Josiah Parker was issued under a special resolution of the Virginia legislature, was for services of less than three years on the continental establishment, and was authorized in November 1783, after the cession to the United States.

Mr Corwin, contra, argued: 1. That this court had no jurisdiction of the case on the pleadings and evidence.

2. That the warrant to Josiah Parker was good and valid, it having issued prior to the transfer of the soil by Virginia to the United States.

3. The warrant of Parker being in usual form, expressing upon its face legal consideration, and having been issued upon the order and judgment of the proper tribunal authorized to hear and determine such cases, and no appeal or writ of error being allowed from such decision; it cannot be questioned in a collateral way, but must be taken as conclusive evidence of the right of Parker to the warrant. Cited on this point, Ohio Land Laws, 129, 132, 134, 135; Hughes's Ken. Rep. 46; 2 Bibb, 134; 1 Marshall, 149.

He denied that the construction of an act of congress was

drawn into question in this case before the courts of Ohio, in deciding on the rights of the parties.

The warrant of the 21st of November 1783 was before the courts of Ohio; and it was not necessary for those courts to look beyond the Virginia laws to decide upon the rights of the complainant there.

But if the warrant to Josiah Parker was a resolution warrant, it was good under the act of congress. The cession by Virginia was made in March 1784, and the warrant was issued on the 21st of November 1783. The act of congress of 1807 covers all land *engaged* by the state of Virginia prior to the cession, not prior to the preparatory legislation in reference to the cession. All existing rights to lands under the legislature of Virginia were to be satisfied out of the reserved lands. This is clearly one of the cases included under the act of 1807. That act relates in terms to resolution warrants, and does not relate to warrants under the Virginia law of 1779.

A resolution is a law within the meaning of this act. No officer entitled to a warrant under the Virginia law of 1779 took a resolution warrant: and the necessity for a warrant arose from the fact that the officer in this case was not entitled under the act of 1807. Cited, also, Act of Congress of 1803, 7 L. U. S. 171.

Mr Chief Justice MARSHALL delivered the opinion of the Court.

This is a writ of error to a decree pronounced by the supreme court of the state of Ohio, sitting in and for the county of Brown, in a case in which the defendant in error was plaintiff. The case must therefore be brought within the twenty-fifth section of the judicial act, or this court cannot take jurisdiction of it.

The plaintiff in error alleges that the construction of an act of congress was drawn in question on the trial, and that the decision was against the title set up under the act; and also, that the construction of a state law was drawn in question, as being contrary to an act of congress, and the decision was in favour of the party claiming under the state law.

Josiah Parker obtained a land warrant from the land office of Virginia, for his services in the Virginia line, on continental

establishment.   The defendant in error having located the warrant on lands in the military reserve, and received a patent therefor, instituted a suit in chancery against the plaintiff in error, who held the same land under a prior grant, and obtained a decree for a conveyance.   This court cannot examine the general merits of the decree.   Our inquiries are in this case limited to the question, wnether the record shows that an act of congress has been misconstrued, to the injury of the plaintiff in error, or the title of the defendant in error has been sustained by a law of a state which is repugnant to a law of the United States.   Both questions depend on the construction of the act by which Virginia ceded the territory she claimed northwest of the river Ohio to the United States, of the resolution accepting the deed of cession, and of the acts of congress prolonging the time for completing titles to lands within the Virginia military reservation.

The deed of cession was executed by the members of congress, then representing the state of Virginia, on the 1st of March 1784; in virtue of a power conferred on them by the act of cession, which act it recites.   One of the conditions on which the cession is made, is, 1 Laws U. S. p. 474, " that in case the quantity of good lands on the southeast side of the Ohio," " which have been reserved by law, for the Virginia troops or continental establishment, should" " prove insufficient for their legal bounties, the deficiency should be made up to the said troops, in good lands to be laid off between the rivers Sciota and Little Miamis, on the northwest side of the river Ohio, in such proportions as have been engaged to them by the laws of Virginia."

The deed was accepted by congress according to its terms. The act of cession to which the deed refers was passed on the 20th of December 1783.

In his answer to an amended bill filed by the plaintiff in the state court, the defendant says " that if the complainant's entry does contain that certainty and precision which the law requires, in order to constitute a valid entry, yet the complainant has no equitable claim to the lands in question, because, first, said entry is based upon a resolution warrant, which is not protected by any act of congress: and cannot, therefore, be a foundation on which to base a valid entry."

The warrant to which the answer refers is in the usual form, and does not purport to have been issued in virtue of a resolution. But the warrant did in fact issue on a resolution which appears in the proceedings in the cause.

It appears that Colonel Josiah Parker presented a petition to the general assembly of Virginia, in which he stated himself to have served two years and ten months in the Virginia line or continental establishment, after which he resigned his commission as a colonel in the army. That since his resignation he had been called into service as colonel, commanding a corps of militia, during every invasion of the state. He prays that the assembly will grant him a colonel's allowance of lands. This petition was referred to a committee, whose report stated the facts, and concluded with the following resolution. "Resolved, that the petition of the said Josiah Parker, praying that he may be allowed the bounty in lands, by law given to a colonel in the continental line, is reasonable. This resolution was approved by the senate, and was passed the 20th of November 1783.

In March 1807, congress passed an act, extending the time for locating Virginia military land warrants, which enacts 'that the officers and soldiers of the Virginia line or continental establishment, their heirs or assigns, entitled to bounty lands within the tract reserved by Virginia, between the little Miami and Sciota rivers, for satisfying the legal bounties to her officers and soldiers upon continental establishment, shall be allowed a further time," &c. This act was continued by subsequent acts, so as to be in force when the survey was made under which the complainant in the state court obtained his decree. Does the act cover his case?

We think it extends to every case which comes within the reservation made by Virginia in her act of cession. The deficiency of good lands on the southeast of the river Ohio, having been admitted by congress, the inquiry is, whether the warrant granted to Josiah Parker is among those for which the reserve on the northwestern side of that river was made?

The resolution grants the land to Josiah Parker as a colonel in the continental line. At the time it was passed, Virginia possessed the territory in which it was located in

absolute sovereignty. The deed of cession had not been executed, nor had the act been passed by which that deed was authorised. Congress, by accepting the cession, admitted the right to make it, and that right has never since been drawn into question.

The resolution then gave to Josiah Parker all the right it purported to give. What was that? "The bounty in lands by law given to a colonel in the continental line." By this resolution Josiah Parker was placed by the state of Virginia on precisely the same footing with a colonel who claimed under the act which had previously been passed. Had the cession never been made, no distinction could have been taken between them. The officer by whom the warrant was issued, perceived no distinction, and the warrant is expressed to be "for his services for three years as a colonel in the Virginia continental line." To discover what services the legislature received as an equivalent for two months of this time, services performed at the head of corps of militia, we must look at the petition and the report of the committee.

But the legislature at that time possessed the same power to bestow their bounty on an officer who had performed the services stated in Colonel Parker's petition, and in the report of the committee, as on one who had completed his three years in the continental line. They possessed the same power to bestow that bounty on an individual in the form of a resolution, as on their officers, generally, in the form of an act. The one conferred the same rights as the other, and was equally obligatory on the state. Had the lands been retained by Virginia, no distinction could have been made between these claims, and it is impossible to perceive any reason why she should have distinguished between them in the reservation contained in her act of cession. Do the words of the act set up this distinction?

They are "that in case the quantity of good land on the southeast side of the Ohio, which have been *allowed by law* for the Virginia troops upon continental establishment, should," "prove insufficient for their *legal bounties,* the deficiency should be made up," &c.

It cannot be doubted that Colonel Parker's warrant might have been located on the land "reserved by law on the south-

east side of the Ohio, for the Virginia troops upon continental establishment."

This reservation is made in general terms. It is not connected with the allotment of specific quantities for specific services. Provisions were afterwards made for this subject, and those provisions varied at different times. At one time, service was required during the war; by another act three years service entitled the officer to his bounty; and an increased bounty was allowed for those who had served six years and upwards. Officers who resigned after serving three years, were entitled to the bounty by an act which was passed so late as the year 1782. Particular resolutions were passed afterwards, in favour of officers who were deemed by the legislature to have performed services as meritorious as if they had remained in the regular army for three years. All these warrants were equally entitled to be satisfied out of the land "reserved by law on the southeast side of the Ohio for the Virginia troops on continental establishment." They were equally "*legal bounties*," equally bounties "which had been engaged to them by the laws of Virginia," before her cession of the territory northwest of the Ohio; for a resolution receiving the assent of both houses, is a law as operative as an act of assembly.

If, then, under the laws of Ohio, we may consider the petition of Colonel Parker and the report of the committee as part of the record in this cause, the court of Ohio does not appear to us to have misconstrued the act of cession or any act of congress.

The decree of the supreme court of the state of Ohio sitting in and for the county of Brown is affirmed with costs.

This cause came on to be heard on the transcript of the record, from the supreme court of the state of Ohio, setting in and for the county of Brown, and was argued by counsel; on consideration whereof, it is ordered, adjudged and decreed by this Court, that the judgment and decree of the said supreme court in this cause be, and the same is hereby affirmed, with costs.