JAMES CLEMENS, Jr., Appellant, v. JOHN RUNCKEL, Respondent.

*Limitations—Adverse Possession.*—The entry and possession of one who enters upon land to hold for himself, with the expectation of procuring a pre-emption under the acts of Congress, is adverse to the real owner having the title.

### Appeal from St. Louis Land Court.

*Glover & Shepley*, for appellant.

I. The doctrine of limitation by time is based upon the idea that when one enters on land, claiming title to it, acquiescence by the real owner for the specified period will make the occupant's assertion of right in himself good. It is deemed just in the law to give a claim so made and so sustained this respect. It is this claim and pretence of right in the occupant which, by the non-assention of the owner, might mature into a legal possession by the tenant. And if, when the occupant entered, he merely declared the title to be in the United States, it is difficult to discover how such an assertion could be matured into a title in defendant.

The possession must be adverse; and to be so, there must be a claim. This is the doctrine on which the decision proceeds in every case. (Ang. Lim. 443.)

II. If the jury return their verdict only that defendant has held quiet possession for more than twenty years, there is no legal intendment of disseizin. (Ang. Lim. 415.)

III. The law deems every person who has complete title to

be " in legal seizin," and this continues till he is ousted by some one in actual possession under claim of right. (Ang. Lim. 400–2.) When tenant admitted orally the plaintiff was owner, he recovered. (4 Wend. 558.)

IV. When a party takes possession under a certain claim, such possession will be held to continue under such claim. (2 Wheat. 30.) There must be claim of property. That the tenant claimed the property may be shown by facts and circumstances; but the claim must be shown to make the possession adverse. (11 Pet. 52.)

V. An adverse possession, in all cases, must be strictly proven; for the presumption always is that the possession is in accordance with the regular title until there is clear and positive evidence to the contrary. (1 Black. 129.)

VI. Where persons settle on land without claiming any right in it—mere squatters—they hold under the legal title. (5 Dana, 344.)

VII. There must be an adverse actual possession in order that defendant may defend under the plea. To constitute an adverse possession, there must be some claim or color of title. (12 Iowa, 108.)

*Crane*, for respondent.

I. The land which the jury found for the defendant was all within the enclosure. The evidence of continued and exclusive possession and cultivation of the premises by defendant, and his grantors, for more than ten years before this suit was begun was unusually minute and consistent. The law announced was favorable to the plaintiff, and the plaintiff himself, or those under whom he claims title, had, during the whole term, been fully qualified to bring ejectment for the premises. (Funkhouser v. Langkoff, 26 Mo. 453.)

By the proper rule of adverse possession, the case shows that Kemp's possession was adverse to the plaintiff. His intent, as expressed by his words and acts, show that he took the land to have a home and farm for himself. He had got

to pay the United States for it sometime; but it was none the less his idea that it was his own.

II. Kemp's possession was adverse, according to the doctrine of the adjudged cases precisely similar to this. (3 Penn. 134; 3 Watts, 345.)

III. If the possession was not adverse when begun, it became so either, first, by the act of leasing it by Kemp; or, second, by his selling to Baker. Both took place more than ten years before this suit was begun.

IV. The instruction given for defendant was sufficient. With the others given, it covered the whole case. The statute of limitations being created for repose, has special utility in disputes about land titles; it gives no right, but merely bars a remedy. As a consequence of its operation on the negligent owner, whose rights it extinguishes, the possessor becomes invested with the substance of a fee. In every case where the statute is invoked, the important question is whether the possession is of that character that, having continued the time which the statute requires, will bar the remedy. (Jones v. Porter, 3 Penn. 134; Bryan v. Atwater, 5 Day, 181; French v. Pearce, 8 Conn. 439–43; Jackson v. Todd, 2 Caines, 183; 18 John. 140; id. 355; 5 Day, 188; and in New York, where the statute, 2 R. S. 293, defines what shall be an adverse possession, it has been held that a possession under claim sufficient to destroy all presumption that the defendant is in possession under the plaintiff is adverse; 2 Caines, 183; 13 John. 118; 18 id. 355; Adams v. Guerard et al., 29 Geo. 651–73; 6 S. & R. 23; Ang. Lim., ch. 31, § 23; Jones v. Porter, 3 Penn. 134; Miller v. Shaw, 7 Serg. & R., art. 3, p. 134; Royer v. Beulon, 10 Serg. & R. 303; Sweeney v. McCulloch, 3 Watts, 345; 4 Pet. 504; 7 Wheat. 535; Bradstreet v. Huntington, 5 Pet. 440; Miller v. Shaw, 7 S. & R. 134, and Royer v. Beulon, 10 S. & R. 305.)

BATES, Judge, delivered the opinion of the court.

This was an action of ejectment. The plaintiff showed a clear paper title. The defendant relied upon length of pos-

session under the statute of limitations. The only question presented is upon the character of that possession—whether it was adverse to the plaintiff. There was judgment for the defendant.

This suit was brought February 25, 1859. In 1842, one Kemp took possession of the land, which before then was unoccupied, and built a house upon it, and fenced it and lived upon it until 1848, when he rented it for a year to one Bold, who occupied it as his tenant until the 12th of February, 1849, when he sold his right to one Baker, who immediately took possession, and retained it for three years, when he sold to the defendant, who immediately took possession, and continued to keep it down to the time when the suit was brought.

The possession of the defendant was actual, open, continued, uninterrupted, visible, notorious, distinct, and definite The only question is, was it hostile or adverse to the plaintiff?

Kemp entered into possession believing the land to be Congress land; that is, the property of the United States; and expecting, on account of his possession, to have a right of preëmption whenever the land should be brought into market. Down to the time when he sold his claim to Baker, he still expected to enter the land, and told Baker that he (Baker) could get the land when it came into market. No evidence was given to show what right the defendant thought he acquired by his purchase from Baker.

The defendant, and those under whom he claims, did not enter or hold under the plaintiff. They did not recognize his title. They had no privity with him. They do not appear even to have known of the existence of his title. They recognized a title in another person, (the United States,) who was supposed to be the proprietor, and as to the United States their possession was not hostile; but they did expect to acquire the title of the United States, believing themselves to have a right of preëmption to the exclusion of all other persons, and a present right to the use and possession of the land.

The defendant has the actual possession, within the mean-

ing of the statute of limitations, with a claim, not of abso-
lute title it is true, but of a right to acquire the absolute title,
which right was adverse to all other persons.

Kemp, by his entry, was a trespasser upon the plaintiff,
and the entry being made without a recognition of plaintiff's
title, and solely for the use and benefit of Kemp, and with the
intention thereby to acquire a right of preëmption of the fee,
worked a disseizin of the plaintiff.

Upon very similar state of facts, the Supreme Court of
Pennsylvania has held such possession adverse to the true
owner. (Sweeney v. McCulloch, 3 Watts, 345; Jones v.
Porter, 3 Penn. 132.)

In this case it appeared that the defendant had, within ten
years, extended his possession, but for the land so held a ver-
dict was given for the plaintiff.

The defence was confined to the land actually possessed
for the full period of ten years. No constructive possession
was allowed.

Judgment affirmed. Judges Bay and Dryden concur.