## ALTSCHUL v. O'NEILL.

[58 Pac. 95.]

1. PRESUMPTION OF CONTINUED SEISIN—BURDEN OF PROOF.—The presumption of seisin by the owner of the legal title of land is an attribute of the title, and continues until it has been shown that he has been disseised and dispossessed of the premises, and the burden is upon him who seeks to establish a title by adverse possession to show that his entry was sufficient in character to disseise or dispossess such owner, and that his possession continued to be adverse for the statutory period.

2. ADVERSE POSSESSION—NECESSITY OF CLAIM OF TITLE.—An entry upon and occupation of land that will constitute a disseisin of the true owner and support a claim of title by adverse possession must be accompanied with a claim of ownership, of right, or of title, which all mean the same thing, though such claim may be inferred from the circumstances under which the possession is held: Springer v. Young, 14 Or. 280 : Hicklin v. McClear, 18 Or. 126, and Rowland v. Williams, 23 Or. 515, approved.

3. ADVERSE POSSESSION—RECOGNITION OF GOVERNMENT TITLE.—The entry upon and occupation of land with recognition of the supposed title of the government, and with intention to acquire such title, is not adverse as to one who had previously, without the possessor's knowledge, acquired the title from the government: Beale v. Hite, 35 Or. 176, followed.

4. QUESTION FOR JURY—LETTERS AS ACKNOWLEDGMENT OF TITLE.—In an action to recover possession of real property, letters of defendant, written to plaintiff's attorney, inquiring whether plaintiff could give title to the land in dispute, and also touching the price and terms of sale, were offered in evidence. Evidence was introduced by defendant to show that he was endeavoring to buy in an outstanding title only, and that the letters were written with no intention of acknowledging plaintiff's title, and that plaintiff's grantor was in the meanwhile in litigation with the United States concerning the title to the land. Held, that the question whether or not there was any acknowledgment by defendant of plaintiff's title was properly submitted to the jury: Rowland v. Williams, 23 Or. 516, cited.

From Malheur :   MORTON D. CLIFFORD, Judge.

Action by Charles Altschul against Francis O'Neill to recover possession of section 9, in township 18 south of range 43 east of the Willamette Meridian, in Malheur County, Oregon. The plaintiff deraigns title from the

government of the United States in the following order :
(1) Under a grant by act of congress to the State of
Oregon, approved July 5, 1866, "to aid in the construc-
tion of a military road from Albany, Oregon, to the
eastern boundary of the state ;" (2) a grant by act of
the Legislative Assembly of the State of Oregon, ap-
proved October 24, 1866, to the Willamette Valley &
Cascade Mountain Wagon Road Company ; (3) by act
of congress, approved June 18, 1874, authorizing the
issuance of patents to the lands covered by the grant
aforesaid, and then by mesne conveyances to himself.
In pursuance of the conditions of the act of July 5,
1866, the road company filed its selection list, embracing
the lands in controversy, on September 16, 1886, which
was approved January 27, 1894. On February 10, 1894,
patent was issued to said company. The defendant re-
lies exclusively upon the statute of limitations to defeat
plaintiff's title. Testimony was introduced at the trial
tending to show that defendant went into possession of
the premises some time in October, 1866, and continued
in such possession until the commencement of the action,
January 31, 1898. The defendant testified, in substance,
that he never made any effort to take up the land until
1894 ; that he "didn't think it was necessary ;" that
his wife, or her former husband, had tried to take it up
before ; that he saw there were objections to it, and
"wanted to see the thing settled ;" that he attempted to
homestead the land in 1894, and that it was his inten-
tion, during all the time he was in possession, to get the
land from the government. It was also shown that he
made application to enter the land as a homestead Jan-
uary 30, 1894 ; that a contest ensued with the road
company, which was decided against him by the Com-
missioner of the General Land Office, November 7, 1894,
and this decision was affirmed by the Secretary of the

Interior, March 6, 1896.  The court instructed the jury, among other things, as follows : "A person might admit that the United States, or the state, for that matter, was the owner, and at the same time hold adversely to plaintiff or his grantors, and acquire title by so holding for the statutory period of ten years as against plaintiff or his grantors.  For example : If you find in this case that Mr. O'Neill, the defendant, recognized the United States as the owner of the land in controversy, and expected to acquire title from the United States, but did not recognize the title as being in the plaintiff, or his grantor, the Willamette Valley & Cascade Mountain Wagon Road Company, or if he still so recognizes the United States as the owner, and if he has held the land continuously, adversely, and exclusively, under claim of ownership as against the plaintiff, or his grantor, for a period of ten years before the commencement of this action, I instruct you that he would obtain title by adverse possession as against plaintiff or his grantor, and you should find for defendant."  The verdict and judgment being for defendant, the plaintiff appeals, and assigns the said instruction as error.        REVERSED.

For appellant there was a brief over the name of *Williams, Wood & Linthicum*, with an oral argument by *Mr. Stewart Brian Linthicum.*

For respondent there was a brief over the names of *King & Saxton* and *Samuel Thomas Jeffreys*, with an oral argument by *Mr. Will R. King* and *Mr. Jeffreys.*

MR. CHIEF JUSTICE WOLVERTON, after stating the facts, delivered the opinion of the court.

There was a contention by counsel for plaintiff at the argument that the legal title to this land did not pass out

of the government of the United States until the date of
the approval of the selection list on January 27, 1894 ;
that the statute of limitations would not begin to run
while such title was in the government, and hence that
defendant could not invoke the benefit of the statute, as
the approval was less than four years prior to the com-
mencement of the action.   It was maintained, on the
other hand, that the title passed out of the government
when the selection list was filed, September 16, 1886,
and therefore that the statute began to run at that date,
and, having fully pursued its course, the defendant is the
owner in fee.   Conceding, but not deciding, that the
legal title passed from the government September 16,
1886, we will consider the case upon that hypothesis.
Defendant relies upon two defenses :   One, that he is the
owner of the legal title or fee, acquired by adverse pos-
session ;  and the other, that the plaintiff, his ancestor,
predecessor, or grantor, has not been seised or possessed
of the premises within ten years, hence that he is barred
from asserting any claim thereto.   Both are based upon
the statute, which provides that no action shall be main-
tained for the recovery of real property unless it appear
that the plaintiff, his ancestor, predecessor, or grantor,
was seised or possessed thereof within ten years before
the commencement of such action :   Hill's Ann. Laws,
§ 4.   The same acts by which it is claimed the plaintiff
was disseised during the statutory limitation are relied
upon as constituting the seisin of defendant, holding
adversely in the meanwhile, and form the basis of his
ownership in fee ;  so that, if they are appropriate and
sufficient to constitute the one defense, they are ample to
support the other.   We will therefore make no attempt
to distinguish between the two as we proceed.   The one
issue is, which of the parties has the better title?   And
he who has it should prevail.

1. A perfect title always carries with it, in legal contemplation, lawful seisin and possession. Such seisin and possession is co-extensive with the right, and is deemed to continue until ouster by actual possession of another under claim of right. It is well understood that the mere possession will not in itself, however long continued, bar the right of entry in him who is seised of the fee, for it might not have originally been taken or subsequently held with intention to claim the premises as owner, or it might be permissive : Buswell, Lim. § 227. As was said by Mr. Justice BALDWIN in *United States* v. *Arredondo*, 31 U. S. (6 Pet.) 689, 743 : "The law deems every man to be in the legal seisin and possession of land to which he has a perfect and complete title. This seisin and possession is co-extensive with the right, and continues till he is ousted thereof by an actual adverse possession." And by Chief Justice RICHARDSON in *Lund* v. *Parker*, 3 N. H. 49 : "In settling the question whether possession is adverse or not, every presumption is to be made in favor of the legal title. The law presumes that the possession has gone with the title, until the contrary is shown." Hence, we may say in the present case, the plaintiff having shown that he was the owner of the legal title by ample documentary evidence, that the presumption of his seisin will continue until it has been shown that he has been disseised and dispossessed of the premises by the defendant ; and the burden of proof is upon the defendant to show that his entry was sufficient in character to disseise or dispossess the plaintiff, and that his possession continued to be adverse for more than ten years prior to the commencement of this action. It is sometimes a difficult question to determine when disseisin has taken place, and the reasoning upon the question is somewhat refined, and not at all times fully understood. The books speak of "disseisin in fact" and

"disseisin by election." With the latter we have nothing
to do, for it is disseisin in fact that will set the statute
of limitations running, and give title after the full time
has expired. Blackstone defines disseisin as "a wrong-
ful putting out of him that is seised of the freehold :" 3
Bl. Comm. 169. Littleton says : "Disseisin is properly
where a man entreth into lands or tenements where his
entry is not congeable, and ousteth him which hath the
freehold :" 2 Co. Litt. § 279. And Coke that : "Every
entry is no disseisin, unless there be an ouster also of the
freehold :" Id. Lord MANSFILD, in *Taylor* v. *Horde*, 1
Burrows, 107, says : "Disseisin, therefore, must mean
some way or other turning the tenant out of his tenure,
and usurping his place and feudal relation." THORNTON,
J., in *Unger* v. *Mooney*, 63 Cal. 586 (49 Am. Rep. 100),
after citing various authorities, remarks : "It must be
with intent to usurp the place of true owner, and put
him out of possession." RICHARDSON, C. J., in *Towle*
v. *Ayer*, 8 N. H. 57, says : "Seisin then may be defined
to be the possession of land under a claim, either express
or implied by law, of an estate amounting at least to a
freehold." Further on : "Disseisin is a trespass, but
it is not every trespass which amounts to an actual dis-
seisin. A disseisin is a continued trespass under a claim
of title." Again : "To constitute an actual disseisin,
there must be an entry with intent to usurp the posses-
sion, and to oust another of his freehold." And sum-
ming up : "There is, then, an actual disseisin whenever
one man wrongfully enters upon the land of another, with
intent to usurp the possession, and, retaining the posses-
sion, actually turns the owner out, or at least keeps him
out."

And Chancellor WENDELL, in *Varick* v. *Jackson*, 2 Wend.
167, 202 (19 Am. Dec. 571) : "By a careful examination
of the authorities, it will be found that there could be no

disseisin in fact except by the wrongful entry of a person claiming the freehold, and an actual ouster or expulsion of the true owner, or by some other act which was tantamount." Mr. Justice MILLER, in *Harvey* v. *Tyler*, 69 U. S. (2 Wall.) 328, 349, says: "We think this law to be too well settled to need argument to sustain it. There must be title somewhere to all land in this country, either in the government, or in some one deriving title from the government, state or national. Any one in possession with no claim to the land whatever must, in presumption of law, be in possession in amity with and in subservience to that title. Where there is no claim of right, the possession cannot be adverse to the true title." In *Kincheloe* v. *Tracewells*, 11 Gratt. 587, 605, it is said: "An entry by one upon land in possession, actual or constructive, of another, in order to operate as an ouster and gain a possession to the party entering, must be accompanied by a claim of title." And in *Sacket* v. *McDonnell*, 8 Biss. 394 (Fed. Cas. No. 12,202), Judge BLODGETT, in his instruction to the jury, says: "To sustain this defense, the defendants must show that they or their father, under whom they claim, entered into possession under a claim of title adverse to that of the plaintiffs, or of those under whom they claim; that is, there must have been in some form an assertion on the part of the elder McDonnell, when he took possession, that he claimed title to this property as against all other titles." See, also, *Kerr* v. *Hitt*, 75 Ill. 51. In *Dixon* v. *Cook*, 47 Miss. 220, 226, the court says: "To constitute adverse possession, two facts must concur: First, there must be an entry, under color of right, claiming title, hostile to the true owner and the world; second, that entry must be followed by possession and appropriation of the premises to use, publicly and notoriously, so that the other claimants may take notice, and others may be cog-

nizant of the fact." Again, Mr. Justice BALDWIN, in *Ewing* v. *Burnet,* 36 U. S. (11 Pet.) 40, 51, says : "An entry by one man on the land of another is an ouster of the legal possession arising from the title, or not, according to the intention with which it is done. If made under claim and color of right, it is an ouster ; otherwise, it is a mere trespass. In legal language, the intention guides the entry, and fixes its character." So THOMPSON, J., says, in *Jackson* v. *Porter,* 1 Paine, 457, 466 (Fed. Cas. No. 7,143) : "Possession, accompanied with a claim of ownership in fee, may be deemed *prima facie* evidence of such an estate. In such case it is not the possession alone, but that it is accompanied with the claim of the fee, which gives this effect by construction of law to the acts of the party. Possession *per se* is evidence of no more than the mere fact of present occupation by right."

2.   Some of the authorities seem to maintain that an actual claim of title is not a necessary ingredient to constitute an ouster or disseisin of the owner of the true title, but that it is sufficient if it appear the occupancy was exclusive, and that the person occupying used the premises as his own : *Johnson* v. *Gorham,* 38 Conn. 513. After all, they recognize that there must be an assertion of ownership by the person claiming possession by the employment of the premises as his own ; and, when actual, open, notorious, and exclusive, the true owner must, at his peril, take notice of the adverse occupancy. It is not always possible to prove the claim of right or title by direct declaration to that effect, and the purpose of the party in holding must be gathered from his acts and demeanor while occupying. If such person uses the property as his own, that is one manner of declaring to the world, or the true owner, that he is asserting a title

35 OR.—14.

in hostility to the true title, and thenceforth the owner must beware. Such entry and use raises a presumption of the claim of right or title. It is not conclusive evidence, but a disputable presumption. Mr. Wood, in his valuable work on Limitations (section 256), says : "Generally it may be said that the intention of the occupant is a material element in determining whether or not the possession is adverse in such a sense as to operate as an actual ouster of the true owner, and defeat his right of entry. It is so well settled as to be regarded as a rule that, where there is no claim of title in the occupant, his possession cannot be adverse to the true title, upon the principle that, where a person is in possession, making no claim whatever to the premises, his title, in presumption of law, is in amity with and subservient to the true title." This is in consonance with the utterances of this court, which are admirably epitomized by Mr. Justice MOORE in *Rowland* v. *Williams*, 23 Or. 515, 521 (32 Pac. 404). He says : "The burden of proof falls upon the defendants to establish the adverse possession, and this can only be done by showing such acts as usually accompany ownership, which acts are in their very nature hostile to the true owner."

In *Swift* v. *Mulkey*, 14 Or. 64 (12 Pac. 76), THAYER, J., says : " 'The legal title draws after it the possession, and a right of entry is not barred unless there has been a disseisin, followed by an actual, open, notorious, and continuous adverse possession for the period of ten years next prior to the commencement of the action. To be adverse possession, it must be occupancy under a claim of ownership, though it need not be under color of title.' The law presumes every person to be in the legal seisin and possession of the land to which he has a perfect and complete title ; and this seisin and possession is coextensive with his right, and continues till he is ousted

thereof by an actual possession in another under a claim
of right: Angell, Lim. § 384. But, if there has been
an occupation of the premises for ten years, unexplained,
it will be presumed to be made under a claim of right,
and adverse, and to authorize the presumption of a grant,
unless contradicted or explained.'' See, also, *Springer*
v. *Young*, 14 Or. 280 (12 Pac. 400); *Hicklin* v. *McClear*,
18 Or. 126 (22 Pac. 1057). It would seem from these
authorities that an entry and occupation, such as will
constitute a disseisin of the true owner, must be accom-
panied with a claim of ownership or right or title (terms
of like significance) to the premises in dispute. This
must, in reason, be so, for if a person goes into posses-
sion by permission of the owner, his occupancy cannot
become adverse so long as he continues in that relation.
The result would be the same if he disavows ownership
in any relation, or asserts a naked possession only. By
the very nature of things there can be but one true title
to realty, and so long as that exists possession follows it.
Another title may be inaugurated through adverse pos-
session, and, under our statute, if continued for ten years,
it becomes a perfect title, which then displaces or dissi-
pates the primary title, or that of the original owner. It
would be an anomaly in the law if a person could inaugu-
rate ownership or title, and thereby in due time displace
the true title, without in some way laying claim to it,
either by direct assertion or acts tantamount thereto.
The claim of right is the very essence of the proceeding
by which the new title is acquired, and without it occu-
pancy can never rise to the dignity of a disseisin. A dis-
claimer of all ownership or right would dispel any idea
of adverse holding, but an omission to make such a
claim, either by word or act, will not advance or promote
such idea. So we take it that the new title must be in-

augurated upon a claim of ownership, or right to the acquirement thereof, as against the true title.

3.   Now, the strong contention of counsel is that a claim of ownership and adverse holding need only be against the true owner ;   that the occupant may do this, and, at the same time, admit ownership in the government of the United States ;   and thus acquire the title, notwithstanding the government in the meanwhile did not have the title, but had parted with it, and the plaintiff had acquired such as it formerly had.   The leading authority cited to sustain this position is *Northern Pac. R. R. Co.* v. *Kranich*, 52 Fed. 911.   In that case the general doctrine is admitted to be that, in order to make out a title by adverse possession, the claimant must assert title to the premises possessed as against all others.   But it is declared that an exception prevails in the Western states to the effect that, if a party claims title against all persons except the United States, it is sufficient to fulfill the demands of the statute.   Let us inquire how well, if at all, the doctrine is supported.   The principal cases relied upon are from the states of California, Missouri, and Texas.   Those from California certainly furnish no support for it, as will become manifest by a brief reference thereto.   In *Page* v. *Fowler*, 28 Cal. 605—the first case brought to our attention—the action was for the recovery of a lot of hay.   The defendant was in possession of the land upon which the hay was produced at the time of its production, claiming the right to enter it as a preemption under the act of congress of May 30, 1862.   The plaintiff claimed by right of prior possession and a right of pre-emption granted to certain purchasers of what was known as the "Suscol Rancho" by the act of March 3, 1863.   It was admitted that the premises were public lands of the United States.   Under this state of the case, the court, speaking through RHODES, J., said :   "The

title being, by the admission of the parties, in the United States, neither party, as has been repeatedly held by this court, can rely upon it for a recovery ; nor can they set it up as a defense in a contest for the possession, or in respect to rights of property growing out of the fact of possession." Later in the opinion he continues : "The defendants' possession in this case was adverse to the plaintiff in every sense in which that term is applicable between parties, neither of whom set up color or claim of title, but where each is diligently seeking to acquire the title of the United States to the same parcel of public lands in the honest belief that under the laws of the United States he is entitled to the pre-emption, and will ultimately acquire the legal title. The earlier doctrine of the common law that the possession, to be deemed adverse, must be under color and claim of title, never had any just application to cases where the parties were contesting the right to the possession of parcels of the public lands of the United States, for no color or claim of title could be shown or asserted that was not palpably inconsistent with their admission of title in the United States. To constitute adverse possession in such cases, it is sufficient if the defendant in possession claims the right to the possession against all the world except the United States." In California it has been uniformly regarded that such rights as possession may have given, consistent with the acknowledgment that the ultimate title has not passed from the paramount source, amounted to an interest in lands or title. These were the conditions which prompted the expression of the court: "To constitute adverse possession in such cases, it is sufficient if the defendant in possession claims the right to the possession against all the world except the United States." The rule, though good and perfectly proper in its place, has

been misapplied, and, as a consequence, very naturally led to a fallacy, subversive of sound reasoning and right principles.

The next case relied upon to substantiate the doctrine is *Hayes* v. *Martin*, 45 Cal. 559. This was concerning a Spanish or Mexican grant, prior to the issuance of a patent by the United States government. The holder of such a grant, under the decisions of California, was entitled to the possession pending proceedings for a confirmation of title in the United States court, and could maintain ejectment prior to final confirmation. The statute of limitations, as it respects titles derived from Spain and Mexico, had been amended by the act of April, 1863, and the interpretation of the amendment was that, if such a title had been fully confirmed prior to its passage, an adverse possession of five years after confirmation would bar a recovery; but, if title had not been so confirmed, then that five years from the date of its passage was allowed within which to commence the action, without reference to the subsequent confirmation : *Mayor of San Jose, etc.* v. *Trimble*, 41 Cal. 536. Now, in *Hayes* v. *Martin*, 45 Cal. 559, RHODES, J., in referring to this statute, said : "In *Mayor, etc.,* v. *Trimble,* 41 Cal. 536, the proceedings for a confirmation of the title of the city were still pending, or, in other words, the title of the city had been confirmed, but there had been no final confirmation of the survey, nor had a patent issued, and it was held that the statute would run in favor of the party in the adverse possession." Then he proceeds : "It is not requisite that a party who relies upon the statute should show that he claims title in hostility to the United States. He may admit title in the United States, either with or without a claim on his part of the right to acquire the title from the United States ; and it is sufficient if he has such possession as is required by the

statute, and claims in hostility to the title which the
plaintiff establishes in the action.''   Mark you, the title
which was there the subject of dispute was what was
known as the Spanish or Mexican title, treated in the
State of California as sufficient upon which to base eject-
ment, but inferior and subordinate to the ultimate title,
which the general government had authority to grant or
confirm to the parties justly entitled thereto ; and the
statute referred to was a special statute of limitations
respecting these grants.   The court was not speaking
generally of the statute of limitations, nor applying the
rule to the ultimate title, which carried the absolute or
entire fee, but to such an one as was little, if anything,
more than merely possessory.

Then followed the case of *McManus* v. *O'Sullivan*, 48
Cal. 7, concerning a title of the same nature.   The
United States, by act of congress, had relinquished to
the City of San Francisco certain lands, in trust that
the same should be disposed of or conveyed by the city
to parties in *bona fide* actual possession at the time the
act was passed.   Neither party was claiming title de-
rived from the city, but the purpose of the action was
to establish a possessory title, and thereby determine
the right to a conveyance from the city.   That such was
the nature of the title in litigation is disclosed by the
opinion of the court.   WALLACE, C. J., says :   ''If we
are to consider the case of the plaintiff as resting solely
upon the prior possession of her intestate, and wholly
disconnected with the decree of the circuit court, the
order of the board, the act of the legislature, and the
act of congress already referred to, it is plain that the
possession of the defendants, if adverse in its character,
was sufficient, in point of mere duration of time, to bar
the plaintiff of a recovery in this action ; for their pos-
session, such as it was, began in January, 1862, and this

action was commenced only in August, 1867." Now, upon this state of the case, the learned chief justice proceeds : "It is claimed by the plaintiff, however, that the possession of the defendants was not of an adverse character, within the meaning of the statute of limitations ; and this view is rested in part upon the circumstance that the possession relied upon, though held in hostility to the claim of the plaintiff, was nevertheless held in admitted subordination to the title of the City of San Francisco. But it has been repeatedly determined in this court that a possession taken and held by a defendant for the requisite period, in hostility to the title or claim set up by a plaintiff in the action of ejectment, amounts to an adverse possession against the plaintiff, sufficient to bar a recovery, even though the defendant, while so in possession, admitted the validity of a title outstanding in a third person,"—citing in support, *Page* v. *Fowler*, 28 Cal. 605. Ross, J., in *Lord* v. *Sawyer*, 57 Cal. 65, was not misled, for he states the very essence of the rule with clear discrimination thus : "It is well settled in this court that such possession, though held in admitted subordination to the title of the government, may nevertheless be adverse to every one not holding under the government,"—citing *McManus* v. *O'Sullivan*, 48 Cal. 7 ; *Page* v. *Fowler*, 28 Cal. 605 ; *Hayes* v. *Martin*, 45 Cal. 559. It has come to be held in California that the statute of limitations does not begin to run against one deraigning title under a patent issued in pursuance of the confirmation of a Spanish or Mexican grant until the issuance of such patent : *Galindo* v. *Wittenmeyer*, 49 Cal. 12. Such is the rule as promulgated by the Supreme Court of the United States as it respects these titles : *Henshaw* v. *Bissell*, 85 U. S. (18 Wall.) 255.

The doctrine, however, is not applicable to these titles alone. It was applied in *Manly* v. *Howlett*, 55 Cal. 94,

where a party had acquired the title by patent to certain swamp lands from the state. The case is much to the purpose, and we quote from the opinion : "In regard to the statute of limitations, we are of opinion that the certificate of purchase did not pass the title as title. Subsequent acts were to be performed by Baker before he would be entitled to the patent, viz., payment of the annual interest and of the deferred purchase money. The title was in the state until the issuance of the patent. It is true that before the patent should issue the statute of limitations might build up a title in the possessor as between the parties, so as to determine their rights upon the then condition of things. But the issuance of the patent gave new rights. The patentee and his grantees then had a right superior to any theretofore owned or held by them, viz., the ownership of the land. They then had something which the state had not theretofore parted with. In a suit for the recovery of the land, commenced after the issuance of the patent, the statute of limitations cannot be held to have commenced running prior to the date of the patent." Indeed, the law touching the inception and running of the statute of limitations in California, as it pertains to the fee or ultimate title, is not different from that which obtains elsewhere. In the first place, the statute provides that where it appears there has been an actual, continuous occupation of land under claim of title, it is deemed to be held adverse. The courts have placed this construction upon it : "To constitute adverse possession, the occupation must be open, visible, notorious and exclusive, and must be retained under a claim of right to hold the land against him who was seised ; and the person against whom it is held must have knowledge, or the means of knowledge, of such occupation and claim of right :" *Thompson* v. *Pioche*, 44 Cal. 508, 517. See,

also, *Thompson* v. *Felton*, 54 Cal. 547. Claim of right, in legal parlance, is claim of title. THORNTON, J., in *Unger* v. *Mooney*, 63 Cal. 586 (49 Am. Rep. 100), after discussing the necessary ingredients of an ouster or disseisin, says : "In fine, we think that the authorities justify our saying that every dispossession of the true owner, whether by force or fraud, by violent or peaceful means, and an open and notorious occupation under claim of title in the person who dispossesses, is a disseisin or ouster (disseisin is but a species of ouster. See 2 Bl. Comm.) sufficient to set in motion the statute of limitations, and constitutes an adverse possession, which, when it continues for the period of time prescribed by statute, bars the owner of his right to recover." This is in consonance with what we have heretofore seen to be the rule elsewhere.

The Missouri cases are more to the defendant's purpose. *Clemens* v. *Runckel*, 34 Mo. 41 (84 Am. Dec. 69), appears to be exactly in point. The court there, speaking through BATES, J., says : "The defendant, and those under whom he claims, did not enter or hold under the plaintiff. They did not recognize his title. They had no privity with him. They do not appear even to have known of the existence of his title. They recognize the title in another person (the United States), who was supposed to be the proprietor ; and as to the United States their possession was not hostile. But they did expect to acquire the title of the United States, believing themselves to have a right of pre-emption to the exclusion of all other persons, and a present right to the use and possession of the land." In *Gibson* v. *Chouteau's Heirs*, 39 Mo. 536, 589—a subsequent case—the court said : "This possession [speaking of the possession under an equitable right] was not adverse to the United States, but would be considered as held under the government

(*Landes* v. *Perkins*, 12 Mo. 258) ; but it was adverse to the other parties, who were claiming to be the owners of this same equitable right under which the plaintiff claims, and to which the legal title was united by relation, and it was, therefore, adverse to both titles. The defendants, though without title, were in possession under a claim of title, and with an expectation of obtaining the title from the United States. The possession of one with the intention to acquire a right of pre-emption has been held to work a disseisin of all but the sovereign,"—citing *Clemens* v. *Runckel*, 34 Mo. 41 (84 Am. Dec. 69). This case went to the Supreme Court of the United States (*Gibson* v. *Chouteau*, 80 U. S. [13 Wall.] 92), and the doctrine of the state court was repudiated, the court declaring the principle to be, as stated in the headnotes, as follows : "The occupation of lands derived from the United States, before the issue of their patent, for the period prescribed by the statutes of limitation of a state for the commencement of actions for the recovery of real property, is not a bar to an action of ejectment for the possession of such lands founded upon the legal title subsequently conveyed by the patent. Nor does such occupation constitute a sufficient equity in favor of the occupant to control the legal title thus subsequently conveyed, whether asserted in a separate suit in a federal court or set up as an equitable defense to an action of ejectment in a state court." This utterance of the United States Supreme Court ought to have been sufficient to set the matter at rest, but it seems the Missouri courts have since followed their prior holdings notwithstanding. In *Mather* v. *Walsh*, 107 Mo. 121 (17 S. W. 755), it is held that : "A plaintiff in ejectment must ultimately recover, if at all, on the strength of his own title. * * * The assertion of adverse title against the plaintiff in the action is sufficient. It is not neces-

sary that it should be against 'all the world.' " The
doctrine has been followed by the Supreme Court of
Washington in *Moore* v. *Brownfield*, 7 Wash. 23 (34 Pac.
199), which refers merely to the case just cited, together
with *Francoeur* v. *Newhouse*, 43 Fed. 236, but makes no
attempt to urge any good reason for its adoption.

The more recent cases of the Court of Civil Appeals in
Texas seem also to support the defendant's contention :
*Converse* v. *Ringer*, 6 Tex. Civ. App. 54 (24 S. W. 705);
*Longley* v. *Warren*, 11 Tex. Civ. App. 269 (33 S. W. 304).
But it is doubtful if they are directly to the purpose. The
first case cited asserts that "naked possession, in hostility
to the claim of the true owner, is sufficient as a basis for
the recovery under this statute," and refers to *Craig* v.
*Cartwright*, 65 Tex. 413, as authority. It will be found
that case was based upon an act of February 5, 1841,
which provides, in effect, that ten years of such peacea-
ble possession and cultivation, use, or enjoyment thereof,
without any evidence of title, shall give to such naked
possessor full property preclusive of all other claims :
Oldham & W. Dig. Tex. p. 300, article 1330. So that
under this act it was not necessary that the person en-
tering be more than a naked possessor in order to set
the statute of limitations running ; in other words, if he
remain in such possession for a period of more than ten
years, he loses the character of naked possessor, and be-
comes the owner of the thing possessed. Another feature
in that state is that a later statute provides that an actual
and visible appropriation of the land, commenced and
continued under claim of right inconsistent with and
hostile to the claim of another, sets the statute of limi-
tations running, so that the language employed is re-
strictive, and not as broad as the general rule. Hence
it cannot be said that the Texas authorities absolutely
sustain the defendant's contention.

Now, it is of very little consequence whether we say the holding shall be adverse to "all the world" or "exclusive," because the former is implied by the use of the latter term. This court has established the rule that the holding must be "exclusive," for in *Joy* v. *Stump* (14 Or. 361, 12 Pac. 929), it is said that "When a person relies upon naked possession as the foundation for an adverse claim, * * * such possession must not only be actual, but also visible, continuous, notorious, distinct, and hostile, and of such a character as to indicate exclusive ownership in the occupant." See, also, *Hicklin* v. *McClear*, 18 Or. 126 (22 Pac. 1057). The proposition is broadly stated in 1 Am. & Eng. Enc. Law (2 ed.), 834, that the "possession, to be effectual, must be exclusive, not only of the owner, but of all other persons." And in a comparatively recent case in the United States Supreme Court it was held, after a special reference to many authorities, that a possession in participation with the owner or others could not be exclusive : *Ward* v. *Cochran*, 150 U. S. 597 (14 Sup. Ct. 230). See, also, *Bracken* v. *Union Pac. Ry. Co.*, 21 C. C. A. 387, 75 Fed. 347.

It is inconceivable that a person who claims to have the fee simple title—the absolute and only existing title— and to have acquired it through adverse possession, could have obtained it without holding adversely to all others. The defendant does not now acknowledge title in the government, but says he has the title which it formerly held—the ultimate title, the one that plaintiff claims— and has deraigned from the government. Yet he pretends to have acquired it, while not only conceding and admitting, but asserting, that the government held it during the whole time that the statute was running. Such assertion is matter of record, for he contested the grant to the road company through the land department

on his application to homestead upon the very hypothesis that the government had not parted with its title. The assertion was an admission that he was not claiming the ultimate, but the possessory, title only—such as is possible in subordination to the ultimate title, or a title similar to that which was recognized in California ; perhaps not as good as acquired under the Spanish or Mexican grants, prior to title granted or relinquished by the government ; surely not such as could be denominated an equitable title, in subordination to the government's legal title, or such as was set up in *Gibson* v. *Chouteau's Heirs*, 39 Mo. 536, 589, without avail. He had not proceeded so far with his homestead entry as to hold the government as a trustee for his benefit. The admission of title in the government, to which the plaintiff succeeded, is tantamount to an admission of the plaintiff's title, as it was the only true one to the premises. In this connection Judge Ross' declaration in *Lord* v. *Sawyer*, 57 Cal. 65, is apropos : Such a holding may nevertheless be adverse to every one not holding under the government. The converse is equally true—that it would not be adverse to one holding under the government. If the defendant's possession had continued unexplained for the statutory period, he would, perhaps, have been entitled to the presumption that it was adverse. But the tendency of the testimony and the instruction of the court implies evidence of an admission or assertion that he was not claiming the fee, but a possessory right only, such as would entitle him to a homestead entry, and none other ; and this of itself is sufficient to explain the manner of his holding, and that it never became adverse to the plaintiff. Plaintiff was never ousted or disseised in that view, and hence the statute never began to run against him, because, in legal contemplation, he was all the while in lawful possession under his title. The defendant's

occupancy was not under claim of title, but of a right to enter the land under the homestead law ; and his possession is not conclusive, for it was in subordination to the government.    Such a holding could not operate to disseise the plaintiff, nor was it adverse, so as to dissipate or destroy the true title.   In the light of these considerations, the instruction of which plaintiff complained was one not proper to be given.   This conclusion is in accord with *Beale* v. *Hite*, 35 Or. 176 (57 Pac. 322), recently decided.   In *Fellows* v. *Evans*, 33 Or. 30 (53 Pac. 591), the holder of the patent from the government, which it was admitted was issued by mistake, was not asserting title to the premises, and the real dispute was whether the defendant was the owner, and had conveyed such a title as he had engaged to convey to the plaintiff.

4.   There is another question presented by the record. The defendant, while claiming to be in possession, wrote to plaintiff's attorneys, desiring to know whether plaintiff could give title to the land in dispute, and at another time inquired touching the price and terms of sale.   His letters were offered in evidence by the plaintiff, and it was claimed that they constituted an acknowledgment of plaintiff's title, and, therefore, that the statute of limitations could not run in favor of the defendant.    There was other evidence, however, introduced on the part of defendant, tending to show that he was endeavoring to buy in an outstanding title only, and that the letters were written with no intention of acknowledging the plaintiff's title as the true title to the premises.    There was also evidence to the effect that the road company was in the meanwhile in litigation with the United States concerning the title to these premises and other lands.    The court, under this evidence, submitted to the jury the question whether or not there was any acknowledgment by the defendant of plaintiff's title, and of this

the plaintiff complains. We are impressed, however, that under the conditions and in the light of the evidence it was proper for the court to submit the question to the jury. It has been held in *Walbrunn* v. *Ballen*, 68 Mo. 164, 168, that "A proposition to buy the land by the person in possession is not necessarily a recognition of the title of the person of whom he proposes to purchase. * * * It was well enough to leave it to the jury, or the court sitting as such, to determine, from the evidence, whether such a proposition was made, and with what intent, but it would not have been proper, under the circumstances, for the court to declare, as a matter of law, that a proposition by defendant to purchase of plaintiffs was an acknowledgment that he did not hold adversely to them." To the same effect, see *Headrick* v. *Fritts*, 93 Tenn. 270 (24 S. W. 11); *Rowland* v. *Williams*, 23 Or. 516 (32 Pac. 404). There was, therefore, no error in this respect. But upon the foregoing considerations the judgment of the court below will be reversed, and the cause remanded for such other proceedings as may seem meet, not inconsistent with this opinion.

<div align="right">REVERSED.</div>

<div align="center">

Decided 17 July, 1899.