EASTERN OREGON LAND CO. v. BROSNAN et al.

(Circuit Court, D. Oregon.  October 8, 1906.)

No. 2,922.

1. PUBLIC LANDS—REMEDY OF CLAIMANT AGAINST VOID PATENT—ACTION AT LAW.

Where public lands, patented under the general land laws, had previously been reserved or otherwise appropriated by act of Congress, the patent is void, and the land may be recovered by the true owner by an action at law, where he has such title as will support an action in ejectment.

[Ed. Note.—For cases in point, see vol. 41, Cent. Dig. Public Lands, § 328.]

2. SAME—GRANT FOR CONSTRUCTION OF ROAD—LANDS EXCEPTED.

Where a grant of public lands to a state to aid in the construction of a military road excepted therefrom all lands theretofore "reserved to the United States or otherwise appropriated by act of Congress or other competent authority," land within the limits of the grant, as subsequently fixed by the filing and approval of the map of definite location of the road, which was at that time merely occupied by a settler, who had made no filing thereon under the land laws, was not within the exception and passed under the grant; but, where the settler was in occupancy under a pre-emption or homestead claim duly filed, the land was "appropriated" and within the exception, and did not pass, although the entry may have been subsequently canceled; and a complaint in an action by one claiming under the grant to recover land subsequently entered by and patented to the defendant under the land laws, in order to state a cause of action and overcome the presumption in favor of the patent, must show affirmatively that at the time the grant became fixed in place the land in question was not within the exception.

[Ed. Note.—For cases in point, see vol. 41, Cent. Dig. Public Lands, § 222.]

At Law.  On demurrer to complaint.

This is an action to recover the possession of real property described as the N. W. ¼ of section 23, township 17 S., range 44 E. of the Willamette meridian, in Malheur county, Or.  The plaintiff derives title through an act of Congress approved February 25, 1867 (14 Stat. 409, c. 77), whereby there were granted to the state of Oregon, to aid in the construction of a military wagon road from Dalles City, on the Columbia River, by way of Camp Watson, Canyon City, and Mormon or Humboldt Basin, to a point on Snake river opposite Ft. Boise, in Idaho Territory, alternate sections of public lands, designated by odd numbers, to the extent of three sections on each side of said road; it being provided that all lands theretofore "reserved to the United States, or otherwise appropriated by act of Congress or other competent authority," were reserved from the operation of the act, except so far as it should be necessary to locate the route of the road through the same, in which event the right of way to the width of 100 feet was granted.  By section 2 it was further provided that the lands thus granted might be disposed of by the Legislative Assembly of the state, for the purposes specified in the act, and no other.  By section 4 the state was empowered to locate and use, in the construction of the road, an additional amount of public lands, not previously reserved to the United States nor otherwise disposed of, within a limit of 10 miles, equal to the amount reserved from the operation of the act, to be selected in odd-numbered sections; and by section 5 it was enacted that the land granted should be disposed of only when the Governor of the state should certify to the Secretary of the Interior that 10 consecutive miles of the road had been completed, and then to an amount not exceeding 30 sections, and so on until the road should have been fully completed.  In pursuance of this act the Legislative Assembly of the state of Oregon, by an act approved

October 20, 1868 (Laws 1868, p. 5), granted to The Dalles Military Road Company, an incorporated concern organized with a view to constructing said road, "all lands, right of way, rights, privileges and immunities" granted or pledged to the state by Congress for the purpose of aiding said company in constructing the road designated and specified in such act of Congress, "upon the conditions and limitations therein prescribed"; and by section 3 the road company was authorized to locate the additional lands granted, subject to the approval of the Governor. After setting out the substance of these acts, the complaint further alleges that prior to June 23, 1869, the road company duly surveyed and definitely located the line of said wagon road between the points designated by the act of Congress and the Legislative Assembly of the state, and fully constructed and completed the road, and filed in the office of the Governor of the state a map thereof, showing the particular and definite location of the same throughout its entire length, and that on the date mentioned the Governor certified that the map or plat had been duly filed in his office by the road company, and that it showed, in connection with the public surveys as far as they were completed, the line of the route as actually surveyed and upon which the company's road was constructed in accordance with the requirements of the acts in question, and, further, that he had made careful examination of the road since its completion, and that the same was constructed in all respects as prescribed, and that he accepted the same. The complaint further alleges that the road company forthwith filed in the office of the Secretary of the Interior of the United States a map or plat of said military road, showing the definite location thereof with reference to, the public surveys as far as then made, accompanied by said certification of the Governor, and that the same was duly accepted by the Interior Department; that on January 15, 1872, the Commissioner of the General Land Office, by an order of the Secretary of the Interior, withdrew from sale and settlement the lands involved by the grant; that subsequent to the survey, and prior to the entry upon said lands of the defendant, the Surveyor General caused said lands so granted by Congress to be surveyed, and that by such survey the real property in question was shown to be situated within the three sections in width of the located line of said road as shown by the map aforesaid; that, through mesne conveyances from the road company, the plaintiff has succeeded to all its right, title, and interest in the premises in question, and is now the owner in fee simple and lawfully entitled to the possession of the same. It is then further alleged, in effect, as amended by stipulation, that long after the title to said land had vested in the plaintiff, as aforesaid, and notwithstanding said grant, the defendant Thomas J. Brosnan represented to the register and receiver of the United States land office at Burns, Or., that said lands, at the date of the taking effect of the grant to plaintiff's predecessor in interest as alleged, were occupied by a bona fide pre-emption settler under the pre-emption laws of the United States, other than himself, and that, by reason of such occupancy and settlement, said lands were excepted from the operation of said grant, and the title thereto remained in the United States; that by reason of said representation of defendant the register and receiver permitted him to file upon and enter said tract of land at the land office, and that thereafter the Department of the Interior, basing its action upon such representation, but without authority of law, caused a patent to issue to the defendant Thomas J. Brosnan, and that by reason thereof said defendant claims to be the owner of said premises; and that defendant has no claim of title or right thereto, other than that based upon said entry and patent. Plaintiff prays for possession of the land, and for the value of the rental and damages. To this complaint a demurrer is interposed, upon the grounds that it does not state facts sufficient to constitute a cause of action and that the court is without jurisdiction to entertain the cause.

Huntington & Wilson, for plaintiff.

Will R. King, W. H. Brooke and F. L. Young, for defendants.

WOLVERTON, District Judge (after stating the facts). In support of the demurrer it is first insisted that plaintiff should have pro-

ceeded in equity, because it has been disclosed by the complaint that the said defendant has a patent title from the government, and that, to avoid such patent, it is necessary to impeach and thus to overthrow or set it aside. Answering this position, plaintiff asserts that the Department of the Interior was without power or authority to issue such patent under the conditions impending, and that, being thus conditioned, the patent is void, and plaintiff's right of possession can as well, if not more appropriately, be tried by an action at law.

The pivotal question about which the entire controversy hinges is whether the premises in dispute were reserved from the operation of the grant to the state for use in the construction of the designated military wagon road. If they were not, the defendant's patent is void. If they were reserved, however, in consideration of the conditions attending the grant, there can be but one result, namely, that they passed to the defendant Brosnan under his patent, which would therefore evidence the better title. The principle involved is concluded by the language of Mr. Justice Brewer, in Burfenning v. Chicago, St. Paul, etc., Ry., 163 U. S. 321, 323, 16 Sup. Ct. 1018, 1019, 41 L. Ed. 175. After considering the authority of the Land Department to determine preclusively questions of fact pertaining to the acquirement of title from the government, he says:

"But it is also equally true that when by act of Congress a tract of land has been reserved from homestead and pre-emption, or dedicated to any special purpose, proceedings in the Land Department in defiance of such reservation or dedication, although culminating in a patent, transfer no title and may be challenged in an action at law. In other words, the action of the Land Department cannot override the expressed will of Congress, or convey away public lands in disregard or defiance thereof"—citing several cases from the federal Supreme Court.

That was an action of ejectment, where patent had issued upon application for an additional homestead, notwithstanding the premises involved were excluded from pre-emption and homestead; and, as indicated, it was held the action was properly brought.

So, in the case of Morton v. Nebraska, 21 Wall. 660, 674, 22 L. Ed. 639, where a patent had issued under the pre-emption act, which declared that "no lands on which are situated any known salines or mines shall be liable to entry," notwithstanding the lands concerned were saline, it was held that the patent was absolutely void; the court saying:

"It does not strengthen the case of the plaintiffs that they obtained certificates of entry, and that patents were subsequently issued on these certificates. It has been repeatedly decided by this court that patents for lands which have been previously granted, reserved from sale, or appropriated are void. The executive officers had no authority to issue a patent for the lands in controversy, because they were not subject to entry, having been previously reserved, and this want of power may be proved by a defendant in an action at law."

See, also, Wood v. Beach, 156 U. S. 548, 15 Sup. Ct. 410, 39 L. Ed. 528, where, the land having been previously withdrawn from sale, preemption, or homestead entry by the Interior Department, ejectment proved an effective remedy.

If, therefore, the premises here in issue were carried to the state by the grant from Congress under consideration, and not reserved by its language, then it is clear, upon both principle and authority, that the action will lie. If not, plaintiff can have no standing in any event. It is always true that in ejectment the plaintiff must recover upon the strength of his own title, and not upon the weakness of that of his adversary. Fussell v. Gregg, 113 U. S. 550, 5 Sup. Ct. 631, 28 L. Ed. 993; Northern Pac. Ry. Co. v. McCormick, 94 Fed. 932, 36 C. C. A. 560. The language of the exception is as follows:

"That any and all lands heretofore reserved to the United States, or otherwise appropriated by act of Congress or other competent authority, be, and the same are hereby reserved from the operation of this act."

The Congress has heretofore appropriated the public lands of a defined character to entry and purchase by private parties. This it has done in part through the instrumentality of the pre-emption and homestead laws, whereby qualified settlers are enabled to make selections, and, by compliance with prescribed prerequisites and conditions, to obtain the ultimate title, and thus in the end the land becomes wholly appropriated to the use and benefit of the individual. In the process of availing himself of the appropriation, the settler is required to observe certain directions of the law before the land will be considered as set apart to him for the especial purpose of his acquirement of the title thereto. When he has observed those directions, he is vested with a right paramount, which enables him to go forward and complete his purchase, even as against the government itself; that is to say, there comes a time in the prescribed process of the acquirement of title by the settler when the government cannot deprive him of his right or privilege by a donation or grant of the land to another, or even for public purposes, without condemnation and just compensation. In development of what I mean should be understood by the foregoing observations, it is said in Hastings, etc., Railroad Co. v. Whitney, 132 U. S. 357, 361, 10 Sup. Ct. 112, 114, 33 L. Ed. 363:

"The almost uniform practice of the department has been to regard land upon which an entry of record valid upon its face has been made as appropriated and withdrawn from subsequent homestead entry, pre-emption settlement, sale, or grant until the original entry be canceled or declared forfeited, in which case the land reverts to the government as part of the public domain, and becomes again subject to entry under the land laws."

Following further comment, the court continues (page 364 of 132 U. S., page 115 of 10 Sup. Ct. [33 L. Ed. 363]):

"So long as it remains a subsisting entry of record, whose legality has been passed upon by the land authorities,. and their action remains unreversed, it is such an appropriation of the tract as segregates it from the public domain, and therefore precludes it from subsequent grants."

And as against a subsequent grant it has been held, by clear and unmistakable enunciation, that mere occupancy of the public domain. without more, does not create such a right or claim in or to the lands occupied as will ipso facto exclude it therefrom. In Lansdale v. Daniels, 100 U. S. 113, 116, 25 L. Ed. 587, the court says:

"Such a notice of claim or declaratory statement is indispensably necessary to give the claimant any standing as a pre-emptor, the rule being that his settlement alone is not sufficient for that purpose."

So in Whitney v. Taylor, 158 U. S. 85, 94, 15 Sup. Ct. 796, 800, 39 L. Ed. 906, the court says:

"But it is also true that settlement alone, without a declaratory statement, creates no pre-emption right."

And, after quoting as above from Lansdale v. Daniels, the court continues:

"And the acceptance of such declaratory statement and noting the same on the books of the local land office is the official recognition of the pre-emption claim."

So, also, in a later case (Northern Pacific R. R. Co. v. Colburn, 164 U. S. 383, 17 Sup. Ct. 98, 41 L. Ed. 479) it was held that no mere occupancy of a tract of public land in and of itself excepted the same from the operation of a railroad grant. To the same purpose see, also, Maddox v. Burnham, 156 U. S. 544, 15 Sup. Ct. 448, 39 L. Ed. 527. And, finally, in Tarpey v. Madsen, 178 U. S. 215, 226, 20 Sup. Ct. 849, 853, 44 L. Ed. 1042, Mr. Justice Brewer, speaking of the result of the cases, says:

"If it be said that this rule ignores the privileges given to temporary occupants of land to make entry within a short time, it must be said that it also denies the personal right of the railroad company to fix definitely its line of road. For when the company has by resolution of its directors established such line, and that has been marked on the ground by posts and stakes, it has done all required by the letter of the statute. If it be said that the railroad company may, notwithstanding its personal action thereafter, vote to locate its road on a different line, so, on the other hand, may it be said that the individual occupant of a tract may abandon his thought of entry; and by making each of the parties' rights, to wit, those of the railroad company and the individual, turn on a matter of record, the court simply gave definiteness and certainty to the congressional grant."

Thus does the government, through Congress, appropriate the public domain to the use of private parties, and thus are indicated the particular conditions that save the appropriation from a general grant for other purposes. So I take it that a pre-emption that has proceeded to the filing of the declaration by the settler of his intention to claim the same as such with, and the acceptance thereof by, the proper functionaries of the Land Department, is an appropriation by act of Congress within the purview of the reservation of the grant under discussion.

It may be predicated of the grant that it became effective to vest title not earlier than the date of filing the map of definite and final location of the road with the Interior Department, which appears from the complaint to have been done forthwith after the approval of the same and acceptance of the road as completed, in accordance with the acts of Congress and the Legislative Assembly of the state of Oregon, by the Governor of the state. The certificate of such approval bears date June 23, 1869. Previous to such filing, the grant could appropriately have been denominated a "float"; but it could not be said

to have attached to any particular odd-numbered sections until definite location of the road, so that it was henceforth insusceptible of change or relocation without further authority from Congress. Manifestly it required a survey of the lands to determine their character and to complete the segregation from the public domain. But this did not prevent the grant attaching to such lands as fell within its terms and conditions. It became effective as a grant in præsenti only by relation back to the date of the enactment. Ever since the case of Van Wyck v. Knevals, 106 U. S. 360, 1 Sup. Ct. 336, 27 L. Ed. 201, it has been settled that, under the usual grants to railroad companies by acts of Congress, the line of location becomes definitely fixed and unalterable by the fact of filing the map of definite location, approved by the proper authorities, with the Secretary of the Interior. See, also, Kansas Pacific Ry. Co. v. Dunmeyer, 113 U. S. 629, 5 Sup. Ct. 566, 28 L. Ed. 1122; Sioux City, etc., Land Co. v. Griffey, 143 U. S. 32, 12 Sup. Ct. 362, 36 L. Ed. 64; Tarpey v. Madsen, 178 U. S. 215, 20 Sup. Ct. 849, 44 L. Ed. 1042.

The case alluded to involved a grant to the state of Kansas, in manner similar to the one under consideration, but with the further provision:

"That as soon as the said company shall file with the Secretary of the Interior maps of its line designating the route thereof, it shall be the duty of the said Secretary to withdraw from the market the lands granted by this act in such manner as may be best calculated to effect the purposes of this act and subserve the public interest."

But it stands to reason that there can be no passing of the title while the definite limitations of the grant remain uncertain; and they must necessarily remain so while the line of location of the road is not definitely and finally fixed and established. However, the entryman of a homestead or pre-emption, who has filed his declaratory statement prior to or at the time of the filing of the map of final and definite location, acquires a right as it respects the lands involved that will cause them to revert to the public domain to the exclusion of the grant should the entry subsequently fail, so that they will become again subject to private entry.

In the case of Kansas Pacific Ry. Co. v. Dunmeyer, supra, the homesteader made a valid entry in respect of the land in dispute July 25, 1866. The map of definite location of the line of the railroad company was filed with the Commissioner of the General Land Office at Washington September 21, 1866, and it was held that the entry brought within the exception the land to which a homestead claim had attached at the time of the taking effect of the grant, and that, although the homestead entry was subsequently canceled, the land continued within the exception, and reverted to the government, to the exclusion of the grant. So, also, in Hastings, etc., R. R. Co. v. Whitney, supra, the applicant made entry of a soldier's homestead May 8, 1865, which stood upon the records of the Land Department until September 30, 1872, when it was canceled by the proper officers of the general government. The map of definite location of the railroad company's line was filed March 7, 1867, and it was held that

the homestead was excepted from the grant, and this, although there was much irregularity accompanying the entry. It was deemed sufficient that the entry remained subsisting of record, having the sanction of the officers whose duty it was under the law to pass upon it. In this case it was also determined that, upon cancellation of the entry, the land did not inure to the benefit of the railroad company, but became again a part of the public domain, subject to private appropriation.

Again, in Whitney v. Taylor, supra, settlement was had in May, 1854, on public land that had not then been offered for public sale. The public survey was filed prior to May, 1857, when the settler duly declared his intention to claim it as a pre-emption right under Act March 3, 1853, c. 145, 10 Stat. 244; his statement of declaration being filed in the proper government record. He occupied until 1859, when he left for England, never returning. The railroad company filed its map of definite location March 26, 1864, and the pre-emption entry was canceled in 1885. It was held that the land came within the exception of the grant, and that when the pre-emption entry was canceled it reverted to the government, and was henceforth subject to homestead. A like principle was declared in Northern Pacific R. R. Co. v. Sanders, 166 U. S. 620, 17 Sup. Ct. 671, 41 L. Ed. 1139, wherein were involved mining claims. See, also, Shiver v. United States, 159 U. S. 491, 16 Sup. Ct. 54, 40 L. Ed. 231.

Now, the complaint as amended alleges, in substance, that Thomas J. Brosnan represented to the register and receiver that said lands were, at the date of said grant and the definite location of said road, occupied by a bona fide pre-emption settler, under the pre-emption laws of the United States, other than himself. If this were all, and taking the fact to be as represented by Brosnan, the claim would not fall within the reservation of the grant, because of the failure of the settler to file his declaratory statement. He would have been a mere settler—nothing more—whose acquired rights could not avail him as against the grant. But the complaint is silent as to whether the settler filed his declaratory statement or not. That he did not prior to the vesting of the title under the grant, if such were the case, should be made to appear. Otherwise, the land was reserved, and the Interior Department will be presumed to have proceeded with authority in issuing the patent. What was set forth in the case of Northern Pacific R. R. Co. v. Colburn, supra, was that the settler never made any entry in the local land office, and that the decision of the Secretary of the Interior was based simply on the fact of occupation and cultivation; and the court said:

"While the decision of that fact may be conclusive between the parties, his ruling that such occupation and cultivation created a claim exempting the land from the operation of the land grant is a decision on a matter of law, which does not conclude the parties and which is open to review in the courts."

But the plaintiff here does not bring itself within the compass of that case, because of the omission indicated from the complaint, and the demurrer should, therefore, be sustained. In this consideration, I have not overlooked the contention of defendants' counsel that oc-

cupation by a qualified and bona fide settler constitutes a claim, thus bringing the land occupied within the exception of the grant, within the doctrine of the case of Northern Pac. Ry. Co. v. McCormick, supra, more recently concurred in by the Supreme Court in Nelson v. Northern Pacific Ry. Co., 188 U. S. 108, 23 Sup. Ct. 302, 47 L. Ed. 406. Those cases, however, are without application here. The enactment there considered is:

"That there be, and hereby is, granted," etc., odd-numbered sections within prescribed limits, "and whenever on the line thereof the United States have full title, not reserved, sold, granted, or otherwise appropriated, and free from pre-emption or other claims or rights, at the time the line of said road is definitely fixed."

The holding of these cases is that continuous occupancy, with a view in good faith to acquire title as soon as surveyed, constituted a claim upon the land within the meaning of the act, and, as that claim existed when the railroad company definitely located its line of road, the land was by the express words of the act excluded from the grant. The act here under consideration contains no such words or language. Whether or not the settlement upon and occupancy of unsurveyed land gave the settler such a right under the law as that he was entitled to make his filing of intention to pre-empt after the filing of the map of definite location of the road, and within three months after the approval of the township plat as surveyed, and thereby bring the land within the reservation, is a question I have not considered or determined, as it is not presented by the record; the simple question here being, as indicated, whether mere settlement and occupancy of a qualified and bona fide settler, without more, constitutes such a claim of right to the land as brings it within the reservation of the grant. I hold that it does not. But, notwithstanding, the demurrer to the complaint should be sustained, for the reason it is not shown that the Interior Department was without power to issue the patent to the defendant because no declaration of intention was seasonably filed by the settler. Unless such patent is thus or otherwise impeached, it must stand as the better title; the present allegations, as indicated, being insufficient for the purpose.