Argued May 3, decided June 1, 1909.

## BOE v. ARNOLD.

[102 Pac. 290.]

PUBLIC LANDS—GRANTS TO STATES—SELECTION OF LANDS.

1. Act Cong. July 5, 1866, c. 174, 14 Stat. 89, granted to Oregon for the construction of a military wagon road, alternate odd-numbered sections of public land, three sections per mile to be selected within six miles of said road, and Act June 18, 1874, c. 305, 18 Stat. 80, provided that patent should issue to the grantee of the State after the lands had been selected and approved. *Held,* that the selection by a road company to which the State granted its right and the filing of the selection list did not pass the title from the government until the selection was approved by the Secretary of the Interior.

PUBLIC LANDS—GRANTS FOR INTERNAL IMPROVEMENT—ASSIGNMENT BY STATE—RIGHTS OF GRANTEE.

2. Where a military wagon road company, as assignee of the State, has filed its selection of lands under Act Cong. July 5, 1866, c. 174, 14 Stat. 89, grant-

ing to the State certain land to aid in the construction of a military wagon road to be selected within six miles of the road, and thereafter a part of the land is withdrawn by the Secretary of the Interior and other lands selected by the company were taken by it in place of the lands withdrawn, so that the company had received its full quota of lands under the grant, a grantee of the wagon road company is estopped from claiming land covered by the original selection.

ADVERSE POSSESSION—PUBLIC LAND—PRIOR GRANT.

3. One claiming title to land by adverse possession for a period of ten years as against all persons, but recognizing the superior title of the United States Government, and seeking in good faith to acquire that title, may assert such adverse possession as against any person claiming to be the owner under a prior grant.

From Malheur: GEORGE E. DAVIS, Judge.

Statement by MR. JUSTICE MCBRIDE.

Plaintiff, Christ C. Boe, brings ejectment against Hoyt Arnold, defendant, to recover certain land situated in Malheur County.

Defendant makes general denial, and pleads the following separate defenses: (1) That he is in possession as lessee of A. N. Soliss, and that Soliss is the owner in fee of the demanded premises. (2) Act Cong. July 5, 1866, c. 174, 14 Stat. 89, granting to the State of Oregon three sections of land per mile of road, to be selected within six miles on each side of said road, to aid in the construction of a wagon road from Albany to the eastern boundary of the State; and the further act of June 18, 1874 (18 Stat. 80, c. 305), providing that patent should issue to grantee of the State after the lands have been selected and approved, and alleges that the map of definite location of the eastern section of said road was filed July 10, 1871; that the demanded premises were within the limit prescribed by the act, and were selected by the Willamette Valley & Cascade Mountain Wagon Road Company, September 27, 1886; that the Commissioner of the General Land Office is alleged to have been directed to withdraw the odd sections falling within the limits designated on an accompanying plat, June 2, 1872, but such plat was not received by the local land office at La Grande until July 5, 1883; that on February 18, 1893,

Josiah H. Chandler, predecessor in interest to defendant and from whom A. N. Soliss, defendant's lessor, deraigns title, filed his application for a homestead on said land, alleging continuous settlement since 1881. The answer also alleges a contest on the part of the company, a decision in favor of Chandler by the local land office, and successive appeals from that office to the Commissioner of the General Land Office and Secretary of the Interior, in all of which the decision of the local land office was affirmed, and, after notice to the company, was made final. It further alleges that neither said company nor any one in its behalf questioned said decision, but, on the contrary, said company and plaintiff herein, who is its grantee, acquiesced in the settlement, and received, without question, patent to all other lands contained in the selection list, from which the demanded premises had been stricken, and selected other lands in lieu of the lands in controversy, and secured patent and holds title to such other lands, and that said grant has been fully satisfied and patent issued and received therefor by plaintiff. (3) By way of estoppel defendant pleads substantially the same facts recited in his previous answer, and alleges that the property is of a greater value than $3,000; and that defendant will be greatly damaged if plaintiff is suffered to assert title to the demanded premises. (4) That he holds possession from A. N. Soliss, his lessor, alleging continuous settlement of the demanded premises by Josiah H. Chandler from 1881 to February 18, 1893, and that Chandler at the latter date filed his application for a homestead; that said application was contested by the Willamette Valley & Cascade Mountain Wagon Road Company; that Chandler was successful in said contest; that the company acquiesced in the same and selected other lands in lieu thereof, for which it received patent; that its grant is now fully satisfied; that the decision in favor of Chandler was granted April 24, 1895; that on December 26, 1904, final certificate

was issued in favor of Chandler, which was recorded in the record of deeds for Malheur County March 7, 1905; that patent to the demanded premises was issued to the heirs of Chandler on March 5, 1906, which was recorded May 8, 1906, and alleges mesne conveyances from certain of said heirs to A. N. Soliss, defendant's lessor; and that Soliss was a purchaser without notice and in good faith of the demanded premises. (5) That adverse possession is and has been in Soliss and his grantors and predecessors in interest for more than ten years next preceding the commencement of this action.

To this there is a reply, denying all the matters therein, except certain matters of record. From a judgment in favor of defendant, plaintiff appeals.          AFFIRMED.

For appellant there was a brief over the names of *Messrs. Brooke & Saxton,* with an oral argument by *Mr. Francis M. Saxton.*

For respondent there was a brief over the names of *Mr. Charles E. S. Wood, Mr. Dalton Biggs, Mr. John W. McCulloch,* and *Mr. Albert N. Soliss,* with an oral argument by *Mr. Wood.*

MR. JUSTICE MCBRIDE delivered the opinion of the court.

1. The first question presented in this appeal is: Did the title to the lands lying within the six-mile limit of the Willamette Valley & Cascade Mountain Wagon Road Company grant pass upon the mere filing of the company's selection list, or did it pass upon the approval of such list by the Secretary of the Interior? It is not disputed that the company filed the map of definite location of its road as to that part of it along which the land in question is situated, on July 10, 1871, and it satisfactorily appears that notice of withdrawal of said lands from entry or sale did not reach the local land office at La Grande until July 5, 1883. The evidence shows Chandler's settlement to have been instituted in 1881 and to have been continued to the present time by himself or his legal repre-

sentatives, or their grantee. Now, if the approval of the company's sleection list by the Secretary of the Interior was necessary to pass title to the land, plaintiff must fail in this action, as it is clear that the Secretary rejected and struck from such list the lands in controversy here, and that they were subsequently patented to the heirs of Chandler. The identical question involved in this action was considered by this court in the case of *Altschul* v. *Clark*, 39 Or. 315 (65 Pac. 991), which was an action involving the construction of the terms of this very grant. In that case it was held by the court that no title passed until the selection had been approved by the Secretary of the Interior. Counsel for plaintiff frankly admit in their brief that, if that case is to be upheld, they must fail in their present contention. That case was fully presented, and the opinion by Mr. Justice Wolverton shows careful research and consideration, and we are satisfied that it correctly states the law in relation to the grant in question, and therefore we still adhere to the doctrine therein announced, so far as it relates to the date that title passed from the United States to the wagon road company.

The recent decision in the case of the *Eastern Oregon Land Co.* v. *Brosnan* (C. C.) 147 Fed. 807, is greatly relied upon by counsel for plaintiff in their argument in this case, and some stress is laid upon the fact that Judge Wolverton who rendered the opinion in the case of *Altschul* v. *Clark*, 39 Or. 315 (65 Pac. 991), after further investigation of the law on the federal bench, arrived at a different conclusion from that reached by him in that case. But the difference of a single phrase in the two acts makes the cases as wide apart as the poles. The granting clause in the act of Congress depended upon in the case of the *Land Company* v. *Brosnan* reads as follows:

"There be and is hereby granted alternate sections of public land designated by odd numbers, three sections

per mile on each side of said road." Act Feb. 25, 1867, c. 77, 14 Stat. 409.

The grant for the Willamette Valley & Cascade Mountain Wagon Road Company reads:

"There be and is hereby granted alternate sections of public land designated by odd numbers, three sections per mile to be selected within six miles of said road."

In the first grant the law selects and designates. Nothing is left to fix the grant, but merely filing a map of definite location. It is a grant in place, a definite location of the road being sufficient to fix and identify it, and the learned judge very properly held that title passed upon such definite location. *Altschul* v. *Clark*, 39 Or. 315 (65 Pac. 991) ; *Wisconsin R. R. Co.*, v. *Price County*, 133 U. S. 496 (10 Sup. Ct. 341: 33 L. Ed. 687). But in the grant under consideration the words "to be selected" are added to the word "designated." Here is no grant in place. Here some agency must select before the grant becomes fixed. Was it the intention of Congress that selections should be made and patent pass without any official supervision by the Government in its own behalf or the interest of its citizens? We think not. Lands to the extent almost of empires have been granted to the very limit of profusion and recklessness to aid railroads and wagon roads, but it is inconceivable that it was the intention of Congress to make the recipient of so generous a grant as this, the sole judge of what it had a right to take without a shadow of governmental supervision. The difference in the result reached in the case of *Altschul* v. *Clark* and *Eastern Oregon Land Company* v. *Brosnan* arises through a radical difference in the terms of the grant; one being a grant in place and the other a floating grant, dependent upon selection. The two decisions are consistent with each other and with the law in respect to the matters heretofore adverted to.

2. In addition to this, it appears from certified copies of the list of land selected and patented by the United

States to the Willamette Valley & Cascade Mountain Wagon Road Company and its grantees, and by official communications of the Commissioner of the General Land Office and the Secretary of the Interior, made in the regular course of business of their respective office, that this grant has been completely filled and the whole matter closed. Conceding, without deciding, that the oral testimony of Col. Wood, manager of the road company, all through these proceedings was not admissible, we think these official communications under the circumstances in which they were made, are admissible, and that, taken together, they show plaintiff's grantor has already received and accepted patent to all the lands required to fill up its grant, and therefore indicate that other lands must necessarily have been selected in place of the demanded premises. This being so, plaintiff is estopped from claiming the land in question.

3. We are of the opinion that the defense of adverse possession is one that was properly interposed in this cause, and that it is fully supported by the testimony. As before stated, Chandler, from whom defendant and his grantors claim title, settled upon the land in question in 1881, and resided thereon continuously as a settler under the homestead laws until 1893, when he filed his application for a homestead. The record is silent as to the date of survey, but this is not material, as a survey had evidently been made when he filed his homestead. His application being contested by plaintiff's predecessors in interest, no final decision was reached until April 24, 1895, followed by a final certificate in his favor in 1904, and a patent to his heirs in 1906. From the date of his settlement until his death, Chandler was in open, notorious, exclusive, and adverse possession of the land, living upon, improving and cultivating the same, and claiming it adversely to every one, except the United States, and that possession and claim have been kept ever since, by his successors in interest. If plaintiff and

his successors never had notice of his adverse, hostile claim at an earlier period, they knew it from February 18, 1893—the date of his homestead application. Unless, therefore, his recognition of ultimate title in the United States prevented the statute from running in Chandler's favor, plaintiff, on his own theory, is out of court. If the wagon road grant was one *in praesenti*, and took effect, as plaintiff claims, from the date of filing its selection list, then plaintiff from that date was in a position to maintain ejectment against Chandler and his successors for more than ten years before the commencement of this action. Now, did the recognition by Chandler of superior title in the United States, operate to defeat defendant's claim of adverse possession? This question was first before this court in *Fellows* v. *Evans,* 33 Or. 30 (53 Pac. 491), a case very similar to the one at bar. In that case the defendant had settled upon the land, made his final proof, and received his final certificate. Subsequently, however, by some mistake or erroneous ruling of the Land Department, the land was patented to a wagon road company. Concerning defendant's claim of adverse possession, the court say: "The evidence shows and the court below found that the defendant and his grantors had been in the adverse possession of the disputed tract of land claiming title thereto as against all the world, except the United States, for more than ten years prior to such sale, which was sufficient to vest in him a perfect title as against the wagon road company." *Beale* v. *Hite,* 35 Or. 176 (57 Pac. 322: 58 Pac. 102), is the next case where this subject was involved, and arose under the swamp land act. The land in controversy was granted to the State by the act of Congress of March 12, 1860 (Act March 12, 1860, c. 5, 12 Stat. 3), as swamp land and conveyed by the State to the plaintiff's ancestor, November 9, 1886, though not patented to the State until 1891. In 1884 defendant settled upon it as a homesteader, claiming that it was not, in fact, swamp

land, but subject to entry as government land, but his filing was refused. Having resided on the land for more than ten years, he plead adverse possession. The court held that the evidence showed that he was a mere squatter, occupying what he believed to be government land, and that, as the government's title had passed to plaintiff, defendant's possession had not been adverse. Upon the facts the decision was clearly right. Adverse possession was not proved in the case, and what follows in the opinion must be regarded as in the nature of dictum. The opinion attempts to distinguish the case then under consideration from the case of *Fellows* v. *Evans,* 33 Or. 30 (53 Pac. 491), remarking that in that case and some of the California cases the defendant's possession was under a recognized claim of title and invoked in defense of a subsequently acquired title. *Fellows* v. *Evans* has never been expressly overruled; in fact, it was practically affirmed in *Beale* v. *Hite,* 35 Or. 176 (57 Pac. 222: 58 Pac. 102). In the case at bar, adverse possession has been set up in defense of the after-acquired title, and would be a good defense if the two cases last cited are good law. In a motion for rehearing the court cites *Altschul* v. *O'Neill,* 35 Or. 202 (58 Pac. 95), as being in accord with its views in *Beale* v. *Hite,* 35 Or. 176 (57 Pac. 222: 58 Pac. 102) ; so that it is evident there was not an intent in the judicial mind to overrule *Fellows* v. *Evans* in the case of *Altschul* v. *O'Neill;* but, on the contrary, it seems that the court was still of the opinion that adverse possession could be properly interposed in defense of an after-acquired paper title, which was the situation in the case of *Fellows* v. *Evans,* and is so in the case at bar, but which was not the condition presented in *Altschul* v. *O'Neill,* 35 Or. 202 (58 Pac. 95), nor in the case of *Altschul* v. *Clark,* 39 Or. 315 (65 Pac. 991), in both of which cases the plaintiff held the record title. In the two cases last mentioned, however, the court seems to lay down the general doctrine

that adverse possession cannot obtain in any case where the claimant recognizes a superior title in the United States. Both opinions are by Mr. Chief Justice WOLVERTON, and show careful research and painstaking consideration so characteristic of that learned jurist. It must be acknowledged that there is much conflict in the authorities. Even the decisions of the courts of the same state are not always harmonious. For instance in *Schleicher* v. *Gatlin,* 85 Tex. 270 (20 S. W. 120), which was much relied on by Mr. Justice BEAN, in *Beal* v. *Hite,* 35 Or. 176 (57 Pac. 222: 58 Pac. 102), has been overruled, and the opposite view expressed by the same court in *Longley* v. *Warren,* 11 Tex. Civ. App. 269 (33 S. W. 304). The authorities supporting the doctrine announced in *Beale* v. *Hite,* 35 Or. 176 (57 Pac. 222: 58 Pac. 102), and in the cases of *Altschul* v. *O'Neill,* 35 Or. 202 (58 Pac. 95), and *Altschul* v. *Clark,* 39 Or. 315 (65 Pac. 991), are cited and thoroughly commented upon in the opinions in those cases, and it is needless to discuss or cite them here. But we are of the opinion that the weight of authority both in the number of courts and in the reasoning advanced is in favor of the contention of the respondent.

In support of the conclusion herein reached, a discussion of some of the authorities bearing upon this subject seems proper under the circumstances. In *Converse* v. *Ringer,* 6 Tex. Civ. App. 51 (24 S. W. 705), decided in 1894, the Court of Civil Appeals of Texas held that, under their statute giving title to one who has had adverse possession of land for ten years, possession may be adverse to the true owner, though maintained under the mistaken belief that the land is vacant, and with the intention of acquiring title from the State under the homestead or pre-emption laws. It was there contended the appellee's vendor, believing the land to be vacant, having entered into and held possession thereof for ten years, intending to acquire title from the State, that his

holding was not adverse to the true owner. Mr. Chief Justice FISHER in deciding the case says: "The position taken by appellant upon this question finds support in the following cases decided by the courts of this State: *Schleicher* v. *Gatlin*, 85 Tex. 270 (20 S. W. 121) ; *Norton* v. *Collins*, 1 Tex. Civ. App. 275 (20 S. W. 1113) ; *Lumber Co.* v. *Ballard* (Tex. Civ. App.), (23 S. W. 921). The first case cited relies for authority on the case of *Mhoon* v. *Cain*, 77 Tex. 317. This case is more fully reported in 14 S. W. 24, where the facts are given, and, from an inspection of the case, it will appear that the question now before us was not decided by the court. The decision rested upon the ground that the party in possession held the land with a view to purchase it from the true owner when it was ascertained who he was, and that he made inquiry for the owner with the purpose of buying the land. He and one Stone had agreed that they would join in the purchase of the land from the owner. The court held that possession under such circumstances was not adverse to the owner. The second case cited relies upon the case of *Schleicher* v. *Gatlin*, and the third case noted, cites no authority to support it. In neither of these cases are any reasons given or stated for the rule they announce; and we apprehend that it would be an exceedingly difficult undertaking to give a reason that could justify the rule, or to find any principle of law as a basis for its support. It is true that limitation will not run when the land is vacated, and title remains in the State; but such is not the case here, and we can perceive no good reason why one in possession of land under the mistaken belief that it is vacant, asserting an exclusive and adverse claim, having the exclusive use and enjoyment of it under a claim that it is hostile to the true owner, may not rely upon such possession in order to prescribed under the ten-year statute. Naked possession in hostility to the claim of the true owner is sufficient as a basis for recovery under this statute. *Craig* v. *Cart-*

*wright,* 65 Tex. 417. Possession is not required to be
adverse to the world, but it is only needful that it be
adverse to the true owner, or one claiming adversely to
the defendant." In *Cartwright* v. *Pipes,* 9 Tex. Civ.
App. 309 (29 S. W. 690), it was held by the same court
that a person asserting an adverse claim to land of which
he had been in the exclusive occupation for ten con-
secutive years, claiming in hostility to the true owner,
can recover it though he acts under the mistaken belief
that it is vacant public land. Mr. Chief Justice GARRETT,
who wrote the opinion in the case of *Schleicher* v. *Gatlin,*
in speaking of the decisions in that and certain other
cases, says: "We shall not review them, and only say
that, under the facts in *Schleicher* v. *Gatlin,* the decision
of that case was right, and that the question was not
involved in the decision of the other cases. Our opinion
is that the fact that a person in possession of land
belonging to another believes that it is public land should
go to the jury as any other fact showing intent in order
to determine the character of the possession." So, too,
in *Longley* v. *Warren,* 11 Tex. Civ. App. 269 (33 S. W.
304), the same court held that one who settles on land
erroneously believing it to be vacant public land, and
expecting to acquire it under the homestead law, may,
by such occupancy, acquire title by adverse possession
against the true owner. Mr. Justice STEPHENS, alluding
in the opinion to the case of *Schleicher* v. *Gatlin,* says:
"We do not, therefore, feel constrained by that decision
to approve a judgment which seems to us to be clearly
erroneous." The power of the Court of Civil Appeals
to overrule a decision rendered by the Supreme Court
of Texas may well be doubted; yet the criticism of the
doctrine promulgated, having originated in that State,
though in an inferior court, is certainly entitled to some
consideration, particularly so as it is participated in
by the author of the opinion in the principal case.
"Adverse possession," as defined by Rev. St. 1879, Article

3198, "is an actual and·visible appropriation of the land commenced and continued under a claim of right inconsistent with and hostile to the claim of another." It is also provided that the statute of limitations does not run against the State. Rev. St. 1879, Article 3200. "Whenever in any case the action of a person for the recovery of real estate is barred by any of the provisions of this chapter, the person having such peaceable and adverse possession shall be held to have full title, precluding all claims." Rev. St. 1879, Article 3196.

It is held in *Bridges* v. *Johnson,* 69 Tex. 714 (7 S. W. 506), that the adverse holding of land for the period of ten years invests the possessor with a title as absolute as if acquired by patent from the State, on which he may sustain an action of trespass to try title. See, also, *Branch* v. *Baker,* 70 Tex. 190 (7 S. W. 808). In *Clemens* v. *Runckel,* 34 Mo. 41 (84 Am. Dec. 69), it was held that a party's possession is adverse to the true owner where he owns and holds actual, open, uninterrupted, and notorious possession of land to which he expects to acquire a title by pre-emption whenever it shall be brought into market. Mr. Justice BATES, speaking for the court, says: "The defendant and those under whom he claims did not enter or hold under the plaintiff. They did not recognize his title. They had no privity with him. They do not appear even to have known of the existence of his title. They recognized a title in another person (the United States), who was supposed to be the proprietor; and, as to the United States, their possession was not hostile; but they did expect to acquire the title of the United States, believing themselves to have a right of pre-emption to the exclusion of all other persons, and a present right to the use and possession of the land." "The defendants, though without title," says Mr. Justice HOLMES, in *Gibson* v. *Chouteau's Heirs,* 39 Mo. 536, "were in possession under claim of title and with an expectation of obtaining the title from the United

States. The possession of one with the intention to acquire right of pre-emption has been held to work a disseisin of all but the sovereign." The statute of Missouri provides that a possession under color of title of a part of a tract of land in the name of the whole, and exercising during the time of such possession the usual acts of ownership over the whole tract so claimed, is deemed a possession of the whole tract. Rev. St. Mo. 1889, § 6768. It also declares that the statute of limitations does not extend to any lands belonging to the State. Rev. St. Mo. 1889, § 6772. In *Barry* v. *Otto,* 56 Mo. 177, it is held that ten years' adverse possession is not only a bar to the statute of limitations, but it creates in the possessor an affirmative title under which he may maintain ejectment, and that such possession raises a presumption that the title has emanated from the Government, and is vested in the holder. See, also, *Davis* v. *Thompson,* 56 Mo. 39. In *Page* v. *Fowler,* 28 Cal. 605, it is held that, to constitute adverse possession of public land, it is sufficient if the party in possession, and claiming that his possession is adverse as against a prior possessor, claims the right to possession as against all the world, except the United States. "It is requisite," says Mr. Justice RHODES, in *Hayes* v. *Martin,* 45 Cal. 559, "that a party who relies upon the statute should show that he claims title in hostility to the United States. He may admit title in the United States, either with or without a claim on his part of the right to acquire the title from the United States, and it is sufficient if he has such possession as is required by the statute, and claims in hostility to the title which plaintiff establishes in the action." In California the statute prescribes what shall constitute an adverse holding of real property under a claim or color of title. Deering's Code Civ. Proc. § 323 *et seq.* It is also held in that State that an adverse possession of land for the statutory period vests the occupant with an absolute title thereto. *Simson* v. *Eckstein,*

22 Cal. 580; *Arrington* v. *Liscom,* 34 Cal. 365 (94 Am. Dec. 722) ; *Cannon* v. *Stockmon,* 36 Cal. 535 (95 Am. Dec. 205) ; *Morris* v. *De Celis,* 51 Cal. 56; *Pacific Life Ins. Co.* v. *Stroup,* 63 Cal. 150; *Johnson* v. *Brown,* 63 Cal. 391. To the effect that a possession of land in subordination to the title of the United States may be adverse as to another claimant, see *McManus* v. *O'Sullivan,* 48 Cal. 7; *Lord* v. *Sawyer,* 57 Cal. 65; *Francona* v. *Newhouse* (C. C.) 43 Fed. 236; *Northern Pac. Ry. Co.* v. *Kranich* (C. C.) 52 Fed. 911; *Rathbone* v. *Boyd,* 30 Kan. 485 (2 Pac. 664) ; *Moore* v. *Brownfield,* 7 Wash. 23 (34 Pac. 199). It has been held that the possession of land by one who recognizes the title of another thereto, may nevertheless constitute an adverse holding as against the true owner. *Skipwith* v. *Martin,* 50 Ark. 141 (6 S. W. 514) ; *Unger* v. *Mooney,* 63 Cal. 586 (49 Am. Rep. 100) ; *Johnson* v. *Gorham,* 38 Conn. 513; *Clark* v. *Gilbert,* 39 Conn. 94; *Portis* v. *Hill,* 14 Tex. 69 (65 Am. Dec. 99) ; *Elliott* v. *Mitchell,* 47 Tex. 445; *Pearson* v. *Boyd,* 62 Tex. 541. In *Mather* v. *Walsh,* 107 Mo. 121 (17 S. W. 755), it is held that the assertion of title by an occupant as against the plaintiff in the action is sufficiently adverse as to him to start the limitation. It need not be an assertion of claim "against all the world." "Actual, uninterrupted, and notorious possession under a claim of right," says Mr. Justice ANDERS, in *Moore* v. *Brownfield,* 7 Wash. 23 (34 Pac. 199), "is sufficient without color of title; and such possession need not be adverse to all the world." In *Marshall* v. *McDaniel,* 12 Bush. (Ky.) 378, it is held that a continued, actual, adverse holding for a period of nearly 35 years perfects the title to land against all the world, unless it be the commonwealth. The adverse holding need not be against the whole world to put the statute of limitations in motion, but the term is used to impart notice; for, if the owner has not actual knowledge that some person has entered upon his premises, the possession of the latter must be

of such a character as to be constructive notice to all the world, on the theory that the owner has left some person in charge who will notify him if his rights are being invaded. *Close* v. *Samm,* 27 Iowa, 503; *Teabout* v. *Daniels,* 38 Iowa, 158; *Poignard* v. *Smith,* 6 Pick. (Mass.) 172; *Alexander* v. *Polk,* 39 Miss. 739; *Turpin* v. *Saunders,* 32 Grat. (Va.) 27; *Cook* v. *Babcock,* 11 Cush. (Mass.) 206. The statutes of California, Missouri, and Texas do not, in our judgment, so materially alter the common-law doctrine of adverse possession as to render necessary a different rule of interpretation in this State from that which prevails in those jurisdictions. The latest decisions of the Supreme Court of the United States rendered in cases having many features similar to the case at bar should of themselves, in our judgment, justify this court in overruling and receding from the doctrine enunciated in *Altschul* v. *O'Neill, Altschul* v. *Clark,* and *Beale* v. *Hite,* so far as they conflict with the views herein announced. *Missouri Land Co.* v. *Wiese,* 208 U. S. 234 (28 Sup. Ct. 294: 52 L. Ed. 466); *Missouri Land Co.* v. *Wrich,* 208 U. S. 250 (28 Sup. Ct. 299: 52 L. Ed. 473); *Iowa R. R. Co.* v. *Blumer,* 206 U. S. 482 (27 Sup. Ct. 769: 51 L. Ed. 1148). In view of the authorities here cited, and especially in the light of the views so lately expressed by the highest tribunal of the nation, we now hold that one claiming title to land by adverse possession for a period of ten years as against all persons, but recognizing the superior title of the United States Government, and seeking in good faith to acquire that title, may assert such adverse possession as against any person claiming to be the owner under a prior grant. Holding these views, we are of the opinion that the judgment of the court below should be affirmed; and it is so ordered.          AFFIRMED.

MR. JUSTICE KING, having been of counsel, did not sit in this case, nor take part in its decision.